Mark Anthony CITIZEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 01–99–00390–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Feb. 8, 2001.

Wilford A. Anderson, Houston, for appellant.

John B. Holmes, Luther A. Dulevitz, Houston, for the State.

Panel consists of Chief Justice SCHNEIDER and Justices WILSON and ANDELL.*

## OPINION

SCHNEIDER, Chief Justice.

Appellant, Mark Anthony Citizen, was charged with possession with intent to deliver cocaine weighing between four and 200 grams. After finding appellant guilty of the charged offense and the allegations

---

* The Honorable Eric Andell, former justice, Court of Appeals, First District of Texas at Houston, participating by assignment.

in the enhancement paragraphs true, the jury assessed punishment at 35 years confinement. Appellant raises one point of error regarding the trial court's denial of his motion to suppress, which was based on the alleged: (1) illegal detention of appellant, and (2) misconduct of the police officers. We affirm.

## I. Facts

Houston Police Officer K.L. Richards had received numerous complaints from unnamed citizens about narcotics activity in the neighborhood. The surveillance of the neighborhood by Officer Richards went on for approximately six weeks. In those six weeks, Officer Richards saw what he believed to be narcotics activity. This activity led him to one house in particular, that of appellant.

In the late evening and early morning of September 4 and 5, 1998, Officer Richards conducted surveillance of appellant's house. He saw appellant outside of his house for approximately 30 to 45 minutes. During this time, five cars drove into appellant's driveway. Appellant either approached the car, or the driver would get out of the car and walk with appellant to the back of the house. Although Officer Richards could not tell what was being transferred, appellant and the drivers conducted some sort of exchange. Officer Richards believed the transaction involved narcotics. Officer Richards decided to call Officer Darrell Breedlove, who arrived at the scene and got into Officer Richards's patrol unit.

During the subsequent 30–minute period, Officers Richards and Breedlove saw another three to five cars enter appellant's driveway. Again, either appellant approached the car, or the driver approached appellant. Appellant and driver then walked to a storage closet next to the house. There, the two officers saw them exchanging something. The officers decided to approach appellant. When appellant was the only person outside the house,

Officer Richards pulled his patrol car into appellant's driveway.

As the officers got out of the patrol car in appellant's driveway, appellant turned away from the officers and walked towards the front door of his house. The officers asked appellant to stop. Appellant did not stop, continuing to the front door. The front door was locked, and appellant could not get in.

Appellant then turned towards the officers, simultaneously placing his right hand in his right, front pocket. At this point, the officers pulled their weapons and ordered appellant to remove his hand from his pocket. As appellant did so, a small bag containing a white substance dropped onto the ground. Appellant immediately fled.

The officers chased appellant on foot, continually telling him to stop. While appellant ran, he dropped another small white bag. Approximately half a block later, the officers caught appellant. As he lay on the ground, appellant bit holes in a third, larger plastic bag containing a white powder substance. This substance, which later proved to be cocaine, spilled onto the ground. The officers took appellant into custody. Appellant fled again, and again was caught and subdued.

## II. Motion to Suppress
### Standard of Review

Absent an abuse of discretion, a trial court's ruling on a motion to suppress will not be set aside. *Oles v. State*, 993 S.W.2d 103, 106 (Tex.Crim.App.1999). The trial court is the sole trier of fact and judge of the weight and credibility of the evidence. *State v. Ballard*, 987 S.W.2d 889, 891 (Tex.Crim.App.1999). In reviewing a ruling on a question of application of law to facts, an appellate court reviews the evidence in the light most favorable to the trial court's ruling. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). An appellate court reviews de novo the trial court's determination of reasonable suspicion and probable cause. *Id.* at 87. An

appellate court must look at the totality of the circumstances to make the reasonable suspicion determination. *Loesch v. State,* 958 S.W.2d 830, 832 (Tex.Crim.App.1997).

### III. Was the Seizure Illegal?

In the first part of his sole point of error, appellant claims Officers Breedlove and Richards seized the contraband illegally because of an unlawful investigative detention. Specifically, appellant claims he was illegally detained when the officers pulled the patrol vehicle into his driveway and approached him as he stood at his front door. We disagree.

Police-civilian encounters are divided into three categories: (1) encounters, (2) detentions, and, (3) seizures. *Francis v. State,* 896 S.W.2d 406, 408–409 (Tex. App.—Houston [1st Dist.] 1995), pet. dism'd 922 S.W.2d 176 (Tex.Crim.App. 1996) (citing *Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968)). In *Francis,* this Court was required to distinguish between an investigative detention and a seizure. *Francis,* 896 S.W.2d at 408. To do so, we held that we must look at all the circumstances surrounding the incident. *Id.* at 411. Beginning with the officer's initial intrusion, we evaluate the reasonableness of each incremental level of intrusion, based on the information possessed by the officer at that time. *Id.* This approach is in accord with *Terry.* 392 U.S. at 18–19, 88 S.Ct. at 1878 (requiring scrutiny of the initiation, intensity, and scope of the police action).

■■■■ Encounters occur when police officers approach an individual in public to ask questions. *Florida v. Royer,* 460 U.S. 491, 497–98, 103 S.Ct. 1319, 1324, 75 L.Ed.2d 229 (1983); *Francis,* 896 S.W.2d at 408–09. The United States Supreme Court spoke of encounters as personal intercourse between police officers and civilians. *Terry,* 392 U.S. at 13, 88 S.Ct. at 1876. "It is now well settled that law enforcement officers do not violate the Fourth Amendment by merely approaching an individual in public to ask ques-

tions." *Florida,* 460 U.S. at 498, 103 S.Ct. at 1324; *Francis,* 896 S.W.2d at 408–09. This encounter does not require any justification whatsoever on the part of an officer. *See United States v. Mendenhall,* 446 U.S. 544, 555, 100 S.Ct. 1870, 1877, 64 L.Ed.2d 497 (1980). The issue in determining whether an encounter occurred is whether the police "would have communicated to a reasonable person that the person was not free to decline the officer's requests or otherwise terminate the encounter." *See State v. Velasquez,* 994 S.W.2d 676, 679 (Tex.Crim.App.1999).

■■■■ An investigative detention is a confrontation of a citizen by law enforcement officers wherein a citizen yields to a display of authority and is temporarily detained for purposes of an investigation. *Johnson v. State,* 912 S.W.2d 227, 235 (Tex.Crim.App.1995); *see also Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972) (defining a temporary investigative detention as a "brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining information ...". An investigative detention is permitted under the Fourth Amendment if it is supported by reasonable suspicion. *See Ornelas v. United States,* 517 U.S. 690, 693, 116 S.Ct. 1657, 1660, 134 L.Ed.2d 911 (1996); *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883. Reasonable suspicion is a particularized and objective basis for suspecting the person is, has been, or soon will be engaged in criminal activity. *Crockett v. State,* 803 S.W.2d 308, 311 (Tex.Crim.App.1991). The police officers must be able to point to specific and articulable facts which, taken together with rational inferences from those facts and the officers experience and general knowledge, reasonably warrant the intrusion. *Terry,* 392 U.S. at 21, 27, 88 S.Ct. at 1880, 1883; *Gurrola v. State,* 877 S.W.2d 300, 302 (Tex.Crim.App.1994); *Francis,* 896 S.W.2d at 408. These facts must create a reasonable suspicion that some activity out of the ordinary is occurring, or has

occurred, some suggestion to connect the detainee with the unusual activity, and some indication that the unusual activity is related to the crime. *Gurrola,* 877 S.W.2d at 302.

## A. The Initial Intrusion—Encounter or Detention?

 Appellant contends that he was illegally detained because the officers had no right to pull into his driveway and approach his front porch. We disagree. In *Cornealius v. State,* 900 S.W.2d 731, 733 (Tex.Crim.App.1995), the Court of Criminal Appeals held that anyone, be it law enforcement or common citizen, has the right to approach a citizen's front porch, unless there are express orders from the owner of the house. "Nothing in the [United States or Texas] Constitutions prevent[s] police officers from addressing questions to citizens on the street; it follows that nothing would prevent him from knocking politely on any closed door." *Id.*

Appellant mischaracterizes the officers' initial approach as an investigative detention because they did not tell him that he was free to decline the officer's requests or otherwise terminate the encounter. *Velasquez,* 994 S.W.2d at 679 (finding an encounter, as opposed to an investigative detention, where officers initiated a conversation with a suspect on a bus, did not have articulable suspicion, asked and inspected his identification, and asked for permission to search his luggage). In this case, the officers got out of the patrol car in appellant's driveway and approached appellant, who stood on his front porch. As appellant turned to walk to the front door, the officers asked him to stop.[1] Appellant obviously felt free to decline the officers' request, as shown by his attempt to gain entrance into his house, rather than stopping. The two officers did not yet have their guns drawn, nor did the

lower court find that the officers at this point otherwise threatened appellant. In short, Officers Richards and Breedlove "merely approached an individual in public to ask some questions," *See Francis,* 896 S.W.2d at 408–09, an act which does not require any justification whatsoever on the part of an officer. *See Mendenhall,* 446 U.S. at 555, 100 S.Ct. at 1877. Thus, we conclude that the officers' initial intrusion was an "encounter," and that no reasonable suspicion was required.

## B. When Did the Seizure Occur?

 Having decided that the officers' initial approach was an "encounter," we must next decide when the "detention" occurred, and whether the officers had sufficient "reasonable suspicion" to warrant such a detention.

 Under both the state and federal constitutions, "in either an investigative detention or an arrest, the seizure of the citizen has not occurred until a reasonable person would believe he or she was not free to leave, and that person has yielded to the officer's show of authority or been physically forced to yield." *Johnson v. State,* 912 S.W.2d 227, 236 (Tex.Crim.App. 1995). Thus, appellant was not detained until after he fled and Officers Richards and Breedlove caught him. At the time he was seized, the officers knew the following: (1) numerous complaints about narcotics activity in the neighborhood had been filed; (2) six weeks of neighborhood surveillance led Officer Richards to believe the narcotics activity centered at appellant's residence; (3) approximately nine vehicles had separately pulled into appellant's driveway within a period of two hours; (4) appellant and the drivers of each vehicle conducted a transaction; and (5) the officers had seen a bag containing a white substance fall from appellant's pock-

---

1. Although appellant alleges four to five police cars and six to seven police officers approached appellant while appellant was at his front door, both officers' testimony directly contradicts the defense witness' testimony.

The trial court's ruling indicates the trial court believed Officers Richards and Breedlove, and this court must defer to a trial court's determination of historical fact. *See Guzman,* 955 S.W.2d at 89.

et before he fled. We conclude, based on this knowledge, the officers not only had sufficient "reasonable suspicion" for an investigatory detention; they had probable cause for a warrantless arrest. Therefore, we overrule the first part of appellant's "sole" point of error.

### IV. Abandonment of Property

In the second part of his sole point of error, appellant argues that police misconduct caused him to involuntarily abandon the first bag of cocaine. In particular, he asserts the involuntary abandonment of property occurred after the officers pulled their weapons and ordered appellant to remove his hands from his pockets. Again, we disagree.

If appellant voluntarily abandoned the contraband, he was not entitled to constitutional and statutory search and seizure protection because the Fourth Amendment does not protect a person who voluntarily abandons his property. *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960); *Hester v. United States*, 265 U.S. 57, 58, 44 S.Ct. 445, 446, 68 L.Ed. 898 (1924). Voluntary abandonment of property occurs if: (1) the defendant intended to abandon property, and (2) his decision to abandon the property was not due to police misconduct. *Brimage v. State*, 918 S.W.2d 466, 507 (Tex.Crim.App.1996); *see also Tankoy v. State*, 738 S.W.2d 63, 67 (Tex.App.—Houston [1st Dist.] 1987, no pet.) (finding no "fruit of illegal arrest" where detention was valid, and the property voluntarily abandoned).

In the instant case, the events leading to the alleged involuntary abandonment of property are as follows: the officers pulled into appellant's driveway; appellant walked to his front door; the officers asked him to stop; appellant attempted to gain entrance into the house, but could not do so; appellant turned to face the officers, simultaneously putting his right hand in his right pocket; the police officers pulled their weapons, demanding appellant remove his hand from his pocket; appel-

lant removed his hand, and the bag of cocaine either fell out appellant's pocket, or he dropped it, and appellant fled.

Both officers testified at trial that they feared for their safety the instant appellant placed his hand in his pocket, and that appellant's act induced them to pull their weapons. Furthermore, we have already concluded that the officers had sufficient information to conclude that appellant had been involved in criminal activity. Thus, it can hardly be said that Officers Richards and Breedlove engaged in misconduct by drawing their weapons under these circumstances.

Additionally, we again note that appellant did not yield to the officers' show of authority; instead, he dropped the cocaine and fled. Because no seizure had occurred before appellant "abandoned" the cocaine, the constitutional protections against unreasonable seizures were not implicated. *See Hernandez v. State*, 963 S.W.2d 921, 925 (Tex.App.—San Antonio 1998, pet. ref'd); *see also California v. Hodari D.*, 499 U.S. 621, 628, 111 S.Ct. 1547, 1552, 113 L.Ed.2d 690 (1991) (holding juvenile who abandoned cocaine while being pursued by policeman lacking reasonable cause for investigatory stop did not abandon cocaine as a result of police misconduct).

We overrule the second complaint in appellant's sole point of error.

### V. Conclusion

We affirm the judgment.