Opinion filed October 21, 2005












 
 
  
 
 







 
 
  
 
 




Opinion filed October 21, 2005

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh Court of Appeals

                                                                   __________

 

                                                          No. 11-04-00180-CR 

 

                                                     __________

 

                             DARRELL
WAYNE JACKSON, Appellant

 

                                                             V.

 

                                        STATE
OF TEXAS, Appellee

 



 

                                  On
Appeal from the County Court at Law No. 1

 

                                                          Taylor
County, Texas

 

                                                 Trial
Court Cause No. 1-110667

 



 

                                                                   O
P I N I O N

 

After the trial court overruled his motion to
suppress evidence, a jury convicted Darrell Wayne Jackson of a Class B
Misdemeanor (possessing a usable quantity of marihuana),[1]
and the trial court assessed his punishment at confinement for 20 days and a
fine of $100.  We affirm.

                                                                              








                                                                Background
Facts

The information and complaint charged that on or
about August 15, 2003, appellant did knowingly or intentionally Apossess a usable quantity of marihuana
of less than two ounces.@  Appellant filed a motion to suppress Aany evidence illegally obtained@ at the time of appellant=s warrantless arrest, claiming that the
two police officers violated his constitutional rights.[2]

We will discuss the testimony of the four
witnesses.  There were two Abilene police
officers plus appellant and his probation officer.  One of the police officers and appellant
testified at the pretrial hearing on the motion to suppress evidence and again
during the jury trial.

Officer Les Bruce testified that he was a police
officer with the police department of the City of Abilene and that he was
assigned to the narcotics division.  He
received a phone call from a Areliable
informant@ on
August 15, 2003, at approximately 4:30 p.m. 
Officer Bruce said that the confidential informant had given him
information in the past which had been reliable and that he chose not to get a
warrant because of exigent circumstances. 
Officer Bruce said that he and Officer Steve Rogers went to the address
and observed Aa subject
that was completely and exactly [as] described@
to him as being Athe
person in possession of the mari[h]uana.@  The two officers walked up to a group of
black males who were sitting on chairs on the open front porch of an apartment
building.  

Officer Bruce said that he asked appellant if he
would step away from the others to talk to him and that appellant came with him
Avoluntarily.@  Officer Bruce agreed that he did not give
appellant any Miranda warnings[3]  before he was searched, and Officer Bruce
said that appellant gave him Aconsent
to a search of his person.@  Officer Bruce said that appellant told him
that appellant Adid not
mind@ if
Officer Bruce looked in appellant=s
pockets.  During that search, Officer
Bruce found the marihuana for which appellant was convicted of possessing.








During trial, Officer Bruce testified that he had
been employed by the Abilene Police Department for more than 21 years and that
he was standing face-to-face with appellant when he found the marihuana in
appellant=s right
front pants pocket. Relevant portions of Officer Bruce=s
testimony during cross-examination read as shown:

Q:
He was restrained [at the time of the search]?

 

A:
He was not restrained.

 

Q:
Well, didn=t
you tell him where to move to?

 

A:
He was detained, but he was not restrained.  (Emphasis added)

 

During redirect examination, Officer Bruce
testified that everything they did that day was in compliance with the standard
operating procedures of the Abilene Police Department.

Appellant testified that he had heard the
testimony of Officer Bruce and that he did not consent to the search.  Appellant testified that the officer Ajust went ahead and did it.@ 
Appellant also testified that the officer did not get the marihuana from
him and that the officers found the marihuana when they were searching the area
around the chairs.  Appellant also
testified:

I
know that it=s a drug
area down there, but I was bringing [my niece] down there to see [my
sister].  I had just got there about five
minutes ago or something like that.  And,
uh, I had no idea there was that [marihuana] in the chair down there.  Because I know that those people do sell
drugs.  (Emphasis added)

 

Appellant said that he did not Afool with any drugs or nothing like
that,@ that he
was on parole, and that he had never failed any of the random drug tests.  On cross-examination, appellant admitted that
he was on parole for possession of cocaine and that he had other prior arrests
for drug possession.  Appellant also
admitted that the sister that he was visiting had Aquite
a lengthy record@ of drug
offenses.  

Officer Steve Rogers testified that he had been a
police officer for the City of Abilene for about 24 years and that he was at
the police station on Friday, August 15, 2003, at about 4:30 p.m., when he
received a telephone call from Officer Bruce who needed his assistance.  Relevant portions of Officer Rogers=s testimony read as shown:

Q: And tell us what happened when you got to the
scene?

 








A: There were several people sitting [outside an
old apartment complex] in chairs.  I went
up to one of them and started doing just small talk, asking, you know, AHow is the weather?@ and things like that.  Agent Bruce did the same thing. 

 

[AFTER
OFFICER BRUCE AND APPELLANT WALKED A FEW FEET AWAY FROM THE OTHER MEN, OFFICER
ROGERS SAID THAT HE FOLLOWED THEM.]

 

Q: And what happened after that?

 

A: Agent Bruce informed him why we were there and
asked him if he had any illegal controlled substance or paraphernalia or
mari[h]uana on his person.

 

Q: And how did [appellant] respond?

 

A: He said, ANo,
I don=t.@

 

Q: What happened after that?

 

A: Agent Bruce asked him, ADo you mind if I look?@ 
And he said, ANo,
not at all.@   And gave a gesture like this (indicating).

 

Q: What happened then?

 

A: Agent Bruce put his hands into [appellant=s] pockets and pulled out a clear
plastic bag containing mari[h]uana. 
(Emphasis added)

 

During cross-examination, Officer Rogers agreed
that they did not get identification from the other men who were there when the
officers arrived at the scene; and he said that the officers did not think that
that was necessary.  He also agreed that
the officers did not fingerprint the package which Officer Bruce found in
appellant=s pocket,
and he said that the officers did not think that that was necessary. 








After the State rested, appellant testified before
the jury and said that he had been working for about two and one-half years for
Aspen Tree Experts (a company which does line clearance work for the electric
utility company), that he had been promoted, and that he was now a crew
supervisor.  Appellant testified that he
received drug counseling and drug rehabilitation while he was in the
penitentiary and that he had been on parole for more than three years.  We note that appellant also testified that he
let Officer Bruce search him and that he claimed that the officer did not find
anything on him.  Appellant said that one
of the officers reached down into one of the chairs and found the drugs
there.  Then the police told him that he
was Aunder
arrest@ and took
him to jail.  Appellant said that the
police never did read him his rights.  

During his cross-examination, appellant said that
he was a Achanged
man@ since he had the counseling while he
was in prison and that he would not do anything to jeopardize his parole
status.  Appellant agreed that he was
arrested while he was at his sister=s
place, that she had quite a criminal record, and that his sister was on parole
when he took his sister=s
daughter to see her.  Appellant also
admitted that he gave consent for Officer Bruce to search him.  Appellant said: AI
did not care one bit.@  Appellant testified that the two police
officers were Alying@ about finding the drugs on him.          Linda
Conley was called as a witness by appellant=s
attorney, and she testified that she was the parole officer who supervises
appellant.  She testified that the
records of the parole office showed that appellant has never had any Adirty@
drug tests, that he has been consistently employed, and that he has reported
consistently.

                                                                Trial
Court=s Ruling

The trial court overruled the motion to suppress
evidence. 

                                                          Issue
Presented for Review

Appellant argues that the trial court abused its
discretion by denying his motion to suppress evidence.

                                                                        Opinion

We review the trial court=s
ruling on a motion to suppress evidence with a Abifurcated@ standard of review, giving almost
total deference to the trial court=s
express or implied findings of historical facts and reviewing Ade novo@
the application of the law to those facts. 
See, e.g., State v. Ross, 32 S.W.3d 853, 856 (Tex.Cr.App.2000).  An Ainvestigative
detention@ is
permitted when it is supported by reasonable suspicion.  Citizen v. State, 39 S.W.3d 367, 370
(Tex.App. - Houston [1st Dist.] 2001, no pet=n).  Reasonable suspicion is evaluated in the
light of all the existing circumstances; and a temporary detention is justified
when the detaining officer has knowledge of specific, articulable facts, which
together with rational inferences from those facts lead him or her to conclude
that the detained person is, has been, or soon will be engaged in criminal
activity.  See Terry v. Ohio, 392
U.S. 1 (1968).








The record supports the following historical
facts.  Two experienced police officers
were responding to a tip from a confidential informant who had given reliable
information in the past.  Appellant fit
the description which had been given to the police, and appellant was detained
in a Adrug area@ where people sell drugs.  Appellant gave consent for the search, and he
was arrested after the drugs were found in his pocket.  The trial court did not abuse its discretion
in overruling the motion to suppress evidence. 
Appellant=s sole
issue for review is overruled.  

                                                                This
Court=s Ruling

The judgment of the trial court is affirmed.         

 

BOB DICKENSON

SENIOR JUSTICE

 

October 21, 2005

Do not publish.  See
TEX.R.APP.P. 47.2(b).

Panel
consists of: Wright, C.J., and

McCall,
J., and Dickenson, S.J.[4]











[1]See TEX. PEN.
CODE ANN. ' 12.22 (Vernon 2003) & TEX. HEALTH & SAFETY
CODE ANN. ' 481.121(b)(1) (Vernon 2003).





[2]Appellant cites U.S. CONST. amend. XIV and TEX. CONST.
art. I, ' 9.





[3]See Miranda v. Arizona, 384 U.S. 436 (1966).





[4]Bob Dickenson, Retired Justice, Court of Appeals, 11th
District of Texas at Eastland sitting by assignment.