# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-05-00639-CR

**Arnie Allen, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NO. D-1-DC-2005- 904049, HONORABLE BRENDA KENNEDY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Arnie Allen pleaded guilty to possession of cocaine after the district court denied his motion to suppress evidence. The court assessed punishment at fifteen years in prison. Appellant contends that the district court erred by denying his motion to suppress because the police illegally obtained evidence from his vehicle. Finding no error, we affirm the conviction.

On February 27, 2004, Austin Police Department officers conducted a narcotics investigation at an Austin hotel. Police arrested Lance Hensley, who offered to assist the investigation. Hensley telephoned a person who he claimed could obtain cocaine. The recipient of the call identified himself as "Arnie." Hensley requested that Arnie bring four ounces of powdered cocaine to room 340 at the hotel. Hensley told police that the person making the delivery would be driving a gold Honda Accord and would be coming from an address on Aries Lane.

Austin Police Officer William Monte, waiting in an unmarked car in the hotel parking lot, observed the driver of a gold Honda who drove through the lot, parked, and walked to the hotel. Monte testified that the driver was wearing a hooded sweatshirt with a large bulge in the front.[1] Monte radioed this information to police officers waiting in the stairwell of the hotel and in room 340. He used the license plate number to learn that the gold Honda was registered to Arnie Nigel Allen at an address on Aries Lane. Monte then joined the other police officers in the hotel stairwell.

Austin Police Officer Gerardo Gonzalez heard Monte's radio reports while waiting in room 340. Gonzalez looked through the peephole when appellant knocked on the door of room 340 and identified appellant as the driver of the gold Honda based on Monte's description. Gonzalez then ordered the police officers in the stairwell to detain appellant. Because of appellant's size—six feet tall, 280 pounds—and the large bulge at the front of his sweatshirt, the police officers ordered appellant to the ground at gunpoint. Appellant was then handcuffed and frisked for weapons. The large bulge was a digital weight scale of a type used by narcotics dealers to weigh narcotics. Police officers also found identification on appellant that identified him as Arnie Nigel Allen.

The police officers ran a warrant check and discovered that appellant was on parole for possession of a controlled substance. Appellant was then moved from the hallway to a vestibule outside the elevator area and given *Miranda* warnings. He was questioned in a hotel room. Appellant initially denied driving the gold Honda, but admitted ownership when told he was seen driving the vehicle. Although the exact details are unclear from the record, Monte testified that Officer Duane Williams obtained appellant's oral consent to a search of his car. Gonzalez testified

---

[1] At trial, Monte identified appellant as the driver.

2

that he was in the room when oral consent was obtained. Gonzalez initially was unable to find cocaine in the car and requested that a canine unit come to aid in the search. Before the canines arrived, he found cocaine in a pillow case hidden under the hood near a fog lamp.[2]

Appellant provided a different version of events. He testified that he went to the hotel to pick up his cousin and looked on every floor. When he stepped out of the elevator on the third floor, he was ordered to the ground by police officers with their guns drawn. Appellant claimed he did not knock on the door of room 340. He asserted that he was not given *Miranda* warnings, and stated that he was held in the hotel hallway for an hour before being questioned. He denied consenting to the search of his car and said he was unaware that it held cocaine. He said that he carried the digital scale for his work as a mechanic.

The trial court denied appellant's motion to suppress, saying, "Let me state for the record that I do find the officer, both officers [Monte and Gonzalez] testifying to be credible witnesses, contrasted to the credibility of the defendant in this case, who I do not find credible, based on the testimony that he gave here today. I also find that the consent was freely and voluntarily given, the oral consent, and that the detention was lawful." After appellant's motion to suppress was denied, appellant pleaded guilty and was sentenced to fifteen years in prison.

Appellant contends that the trial court erred by denying his motion to suppress. He argues that the evidence was obtained in violation of his rights under the Fourth and Fourteenth

---

[2] Appellant seeks supplementation of the record with a canine unit report showing that the dogs were not called until 1 a.m., which he contends would contradict officers' testimony that the cocaine was found before then. It is not apparent that any discrepancy would affect our review. Critically, there is no showing that the canine unit report was admitted at trial. If it was not part of the trial record, it cannot be in the record on appeal. *See* Tex. R. App. P. 34. We deny the motion.

Amendments of the United States Constitution, under article I, section 9 of the Texas Constitution, and under chapters 14 and 38 of the Texas Code of Criminal Procedure.[3]

We review the trial court's decision not to exclude the evidence for an abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex. Crim. App. 2002). We must give almost total deference to the trial court's determination of historical facts and review the court's application of search and seizure law de novo. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). We defer to the trial court on factual matters because its observation of witnesses' demeanor provides a better opportunity to assess their credibility. *Villarreal v. State*, 935 S.W.2d 134, 138 (Tex. Crim. App. 1996). When the trial court bases a decision regarding search and seizure on the credibility of the witnesses, we must sustain the trial court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case. *Id.*

Appellant complains that the police did not have a warrant to search his vehicle. The federal and state constitutions protect against unreasonable searches and seizures. *See* U.S. Const. amend. V; Tex. Const. art. I, § 9. The general requirement that police obtain a warrant before searching private property or a person has some well-established exceptions. *Delgado v. State*, 718 S.W.2d 718, 722 (Tex. Crim App. 1986). A warrant is not required if a peace officer obtains voluntary consent from an authorized person to conduct the search or has probable cause to search a vehicle. *Schneckloth v. Bustamonte*, 412 U.S. 218, 219 (1973) (consent); *Maryland v. Dyson*, 527

---

[3] Appellant's counsel submitted a brief and appellant submitted *pro se* briefs. Although appellants are not entitled to hybrid representation, *Bledsoe v. State*, 178 S.W.3d 824, 827 (Tex. Crim. App. 2005), we grant his motion to respond to the State's brief. We have considered the arguments he raises in his response in addition to those raised in the brief submitted by his counsel.

U.S. 465, 466-67 (1999) (probable cause). The State must prove that consent to search was given voluntarily by clear and convincing evidence. *Reasor v. State*, 12 S.W.3d 813, 818 (Tex. Crim. App. 2000). *But see United States v. Matlock*, 415 U.S. 164, 177 (1973) (federal law requires proof by preponderance of evidence). To determine voluntariness, courts look to the totality of the circumstances including the characteristics of the accused and the details of the interrogation. *Reasor*, 12 S.W.3d at 818 (citing *Schneckloth*, 412 U.S. at 226).

We find two cases particularly instructive regarding review of a finding that consent was voluntarily given. *See id.*; *Manzi v. State*, 56 S.W.3d 710, 719 (Tex. App.—Houston [14th Dist.] 2001), *aff'd*, 88 S.W.3d 240 (Tex. Crim. App. 2002). The court in *Reasor* found voluntary consent even though the defendant was arrested at gunpoint by several officers. *Reasor*, 12 S.W.3d at 815. The peace officers did not have their weapons drawn when the defendant gave consent. *Id.* at 818. Reasor was handcuffed and had been given *Miranda* warnings when he consented. *Id.* The court stated that the handcuffs weighed heavily against the idea that the defendant's consent was voluntary, but the *Miranda* warnings weighed in favor of voluntariness. *Id.* The defendant in *Reasor* was given *Miranda* warnings twice, signed a *Miranda* warning form, and signed a consent to search form. *Id.*

These extra steps are not essential to a finding of voluntary consent. *See Manzi*, 56 S.W.3d at 719. The court of appeals in *Manzi* found that the defendant voluntarily consented to a search after he was arrested at gunpoint, given *Miranda* warnings once, and handcuffed. *Id.* at 716-19. The consent was found voluntary even though the defendant initially refused to consent and police took his hotel room key and moved him from the hallway to a room. *Id.* at 714. The court stated that the handcuffing weighed heavily against the voluntariness of the consent. *Id.* at 717. The

5

court also considered the defendant's initial refusal to consent to the search of his room as a factor in determining whether his consent was voluntary. *Id*. at 718. By contrast, the court found that the move to a hotel room favored a finding of voluntariness because a hotel room is a less hostile venue for discussion than a public hallway, stairwell, hotel lobby, or police station. *Id.* The court also stated that the removal of the defendant's key did not deny him the ability and legal right to refuse to consent to the search. *Id*. The court concluded that the evidence supported finding voluntary consent to the search.

Based on the totality of the circumstances in this case, we conclude that appellant voluntarily consented to the search of his vehicle. The confrontation at the onset of his detention, the handcuffing, the detention, and the removal of his car keys weigh against a finding of voluntariness.[4] But there is no indication that appellant was held at gunpoint after the initial encounter. The move to a hotel room and the provision of *Miranda* warnings help counter the oppressiveness of the circumstances. In the end, this is a credibility choice between the officers and appellant. The trial court credited the officers' testimony that appellant gave consent voluntarily. We must defer to that choice. We find clear and convincing evidence that appellant's consent to the search of the car was voluntary.

---

[4] Appellant contends that his consent was not voluntary because he was improperly under arrest when he consented. The record supports Monte's assertion that appellant was under an investigatory detention. Appellant's appearance in a gold Honda registered to a person with the first name and registered to an address on the street as described by a person summoning a drug supplier supports a reasonable suspicion that he was or soon would be engaged in criminal activity. *See Terry v. Ohio*, 392 U.S. 1, 21 (1968); *Carmouche v. State*, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000); *Citizen v. State*, 39 S.W.3d 367, 370 (Tex. App.— Houston [1st Dist.] 2001, no pet.). Safety concerns justified the initial handcuffing, and the investigation supported the continuing handcuffing. *See Goldberg v. State*, 95 S.W.3d 345, 360 (Tex. App.—Houston [1st Dist.] 2002, pet. ref'd).

The search was also supported by the presence of probable cause to search the automobile. *Delgado*, 718 S.W.2d at 722 (citing *Carroll v. United States*, 267 U.S. 132 (1924)). The automobile exception to the warrant requirement exists partly because the circumstances that provide probable cause to search a particular vehicle are often unforeseeable and the opportunity to search is fleeting since a car can be easily moved. *Id.* (citing *Chambers v. Maroney*, 399 U.S. 42 (1975)).[5] In cases of search and seizure, we apply a totality of the circumstances test to determine whether there was probable cause to conduct a search without a warrant. *Amores v. State*, 816 S.W.2d 407, 413 (Tex. Crim. App. 1991).

Probable cause exists when the facts within the knowledge of the officer on the scene and those of which the officer had reasonably trustworthy information would lead a person of reasonable caution and prudence to believe that he would find evidence pertaining to a crime. *Delgado*, 718 S.W.2d at 722. In *Delgado*, a police officer received information from an informant that suspicious activity had been occurring between a silver, hardtop Pontiac and Room 108 of a particular apartment complex. *Id.* at 719. The officer recognized the owner of the Pontiac as someone known for dealing drugs and noticed that the owner was holding a package containing a hypodermic syringe. *Id.* at 720. After arresting the owner, the officer searched the vehicle and found twelve balloons of heroin in the trunk. *Id.* The court of criminal appeals held that the officer had probable cause to believe contraband would be found in the vehicle based on the totality of the circumstances. *Id.* at 723.

---

[5] Appellant argues that the automobile exception has a separate exigency requirement. However, neither federal nor state law have an exigency requirement. *Maryland v. Dyson*, 527 U.S. 465, 466-67 (1999); *State v. Guzman*, 959 S.W.2d 631, 634 (Tex. Crim. App. 1998).

Like the officer in *Delgado*, Monte and Gonzalez acted on information given by a third party. Monte and Gonzalez identified appellant and appellant's car based on the contents of Hensley's telephone call to appellant and Hensley's description of appellant's vehicle. Appellant walked directly to room 340 where Hensley was supposedly waiting to purchase the cocaine. A frisk of appellant yielded a digital scale that, like the syringe in *Delgado*, was of a type used in drug transactions. Appellant acted suspiciously by denying ownership of the gold Honda. The background check revealed appellant's parole for drug possession. Police officers began to search his car after gathering this information. Based on the totality of the circumstances, we conclude that the police officers in this case had probable cause to search appellant's vehicle.

Based on the totality of the circumstances, we conclude that the record supports the trial court's findings that appellant voluntarily consented to the search and that probable cause existed to search appellant's car. Thus, the trial court did not abuse its discretion by denying the motion to suppress.

We affirm the trial court's denial of appellant's motion to suppress and its judgment.

_____

G. Alan Waldrop, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed

Filed: June 2, 2006

Do Not Publish