NO. 07-07-0472-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

OCTOBER 29, 2008

_____

KIRBY DALE CANTRELL, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 106TH DISTRICT COURT OF GARZA COUNTY;

NO. 06-2364; HONORABLE CARTER T. SCHILDKNECHT, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

Appellant, Kirby Dale Cantrell, was convicted of felony offense of driving while intoxicated and the jury further found, that at the time of commission of the offense, appellant used or exhibited a deadly weapon, to-wit: a motor vehicle. The trial court sentenced appellant to eight years confinement in the Institutional Division of the Texas Department of Criminal Justice. Appellant appeals by three issues. We modify the judgment to delete the affirmative finding of a deadly weapon. The judgment is affirmed as modified.

Factual and Procedural Background

On August 28, 2006, a Garza County Deputy Sheriff was notified of a possible intoxicated driver headed his direction. The deputy was informed that a waitress, whose name was known, had observed appellant and another individual drinking from a paper sack covered bottle at a drive-in restaurant in Post, Texas. The waitress further told the Garza County Sheriff's dispatcher that the sack contained alcohol and the driver and passenger were drinking it. The waitress gave a description of the vehicle, and its two white male occupants and stated that the vehicle had left headed south on U.S. Highway 84. The deputy sheriff proceeded to drive toward Post and met a car matching the description occupied by two white males. Upon meeting the described car, the deputy testified that both the driver and passenger looked directly at him when he passed by. The deputy turned his car around and followed the car that appellant was driving. The described vehicle immediately slowed down below the speed limit. After a short period of time, the deputy drove in the right lane next to appellant's car. When he looked into the vehicle neither appellant nor the passenger would make eye contact with him. The deputy testified that both driver and passenger stared straight ahead and appeared to be nervous. The deputy initiated a stop. When the deputy came to the driver's window, he immediately smelled the odor of alcohol. Appellant then stepped from his vehicle and the deputy noticed the alcohol odor was coming from appellant's breath. Further, the deputy noticed that appellant was slurring his words when he spoke. Inside the car, the deputy noticed empty beer bottles, including one in a brown paper bag. The deputy then called for the Texas Department of Public Safety (DPS) trooper assigned to the area to come and assist

2

with administering field sobriety tests. The DPS trooper arrived and administered field sobriety tests. The DPS trooper testified that he formed an opinion that appellant was intoxicated and, as a result, asked appellant to give a specimen of his breath for testing. Appellant refused. Subsequently, the trooper requested the magistrate in Post to issue a search warrant for a specimen of appellant's blood. The warrant was issued and appellant was taken to a hospital in Lubbock, Texas, where a specimen of his blood was obtained. The analysis of the blood revealed it contained 0.09 grams of alcohol per 100 milliliters of blood.

In a pre-trial hearing, appellant challenged the initial stop contending that the deputy lacked reasonable suspicion to stop him. After hearing the deputy testify and hearing the recording of the call from the waitress, the trial court overruled appellant's objection to the stop. During those same pre-trial proceedings appellant notified the court that he was also contending that the search warrant was not valid. However, that matter was not taken up until the DPS trooper testified at trial. At trial, a hearing was held outside the presence of the jury on the appellant's motion to suppress the search warrant. The trial court overruled appellant's motion to suppress the warrant. At the conclusion of the State's case in chief, appellant moved for a directed verdict which was overruled. The jury subsequently convicted appellant and found that he had used or exhibited a deadly weapon during commission of the offense. This appeal followed.

By three issues appellant contends that the trial court committed reversible error by: 1) admitting the results of the blood test; 2) finding that the deputy had reasonable suspicion for the initial stop; and, 3) that the evidence is legally and factually insufficient

3

to support the finding of a deadly weapon.  We will address each of appellant's issues in turn as presented.

## Standard of Review

Appellant contested both the blood test and the initial stop through a motion to suppress the evidence.  A trial court's ruling on a motion to suppress is reviewed by an abuse of discretion standard.  See Oles v. State, 993 S.W.2d 103, 106 (Tex.Crim.App. 1999);  Maddox v. State, 682 S.W.2d 563, 564 (Tex.Crim.App. 1985).  Whether the trial court abused its discretion depends upon whether, given the record and the law, its decision fell outside the zone of reasonable disagreement.  See Benitez v. State, 5 S.W.3d 915, 918 (Tex.App.–Amarillo 1999, pet. ref'd).  However, if the facts determinative of the motion are undisputed, then the review is *de novo*.  See Oles, 993 S.W.2d at 106; Guzman v. State, 955 S.W.2d 85, 89 (Tex.Crim.App. 1997).  We must uphold the trial court's decision on any grounds, whether or not relied upon by the trial court, when the standard of review is for abuse of discretion.  See State v. Ross, 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); State v. Clemmer, 999 S.W.2d 903, 905 (Tex.App.–Amarillo 1999, pet. ref'd).

## Blood Test

Appellant's contention regarding the invalidity of the blood test is anchored on his interpretation of the implied consent law in the State of Texas.  See TEX. TRANSP. CODE ANN. Ch. 724 (Vernon 1996).  One particular section provides that a specimen may not be taken from a person if the person refuses to submit to the taking unless specific exceptions

enumerated in section 724.012(b) of the Transportation Code apply. See TEX. TRANSP. CODE ANN § 724.013 (Vernon 1996). All parties agree that the exceptions of section 724.012(b) did not apply in this case. According to appellant's contention, the taking of the blood specimen, after appellant had refused to give a specimen of his breath, was illegal and the results should have been suppressed.

This very contention has been previously decided adverse to appellant by the Texas Court of Criminal Appeals. See Beeman v. State, 86 S.W.3d 613, 616 (Tex.Crim.App. 2002) (holding that obtaining a validly issued search warrant authorizing the taking of a specimen does not constitute a violation of the implied consent law and is a valid method of obtaining evidence). As the Court in Beeman points out, the implied consent law expands on the State's search capabilities by providing another framework to obtain a specimen of a driving while intoxicated suspect's blood. Id. at 615. It does not however, supplant the ability of the State to obtain a search warrant. Id. Further, to construe the implied consent law as limiting the ability of an investigating officer to obtain a search warrant is an absurd result contrary to the statute's intent. Id. Once a search warrant has been issued, the question of implied consent becomes moot. Id. at 616. Our sister Courts of Appeals have followed the holding in Beeman. See Gatewood v. State, Cause No. 11-07-00153-CR, 2008 Tex. App. LEXIS 7381 at *2 (Tex.App.–Eastland October 2, 2008, no pet. h.) (not designated for publication), Dye v. State, Cause No. 08-02-00018-CR, 2003 Tex. App. LEXIS 1556 at *4, (Tex.App.–El Paso February 20, 2003, no pet.) (not designated for publication). Thus, we conclude that the admission of the blood test was

5

not outside the zone of reasonable disagreement and, hence, was not an abuse of discretion. Benitez, 5 S.W.3d at 918. Accordingly, appellant's first issue is overruled.

Reasonable Suspicion for Initial Stop

A police officer's interaction with a citizen can be classified as an encounter, detention, or seizure. See Citizen v. State, 39 S.W.3d 367, 370 (Tex.App.–Houston [1st Dist.] 2001, no pet.). Encounters occur when police officers approach an individual in public to ask questions. Id. Encounters do not require any justification whatsoever on the part of an officer. Id. (citing U.S. v. Mendenhall, 446 U.S. 544, 555, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980)). An investigative detention is a confrontation of a citizen by law enforcement officers wherein a citizen yields to a display of authority and is temporarily detained for purposes of an investigation. Johnson v. State, 912 S.W.2d 227, 235 (Tex.Crim.App.1995). An investigative detention is permitted if it is supported by reasonable suspicion. Citizen, 39 S.W.3d at 370. See also Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). Reasonable suspicion is a particularized and objective basis for suspecting the person is, has been, or soon will be engaged in criminal activity. Citizen, 39 S.W.3d at 370 (citing Crockett v. State, 803 S.W.2d 308, 311 (Tex.Crim.App.1991)). A determination of whether the police interaction is an encounter, detention or seizure is assessed by looking at the totality of the circumstances. See Hunter v. State, 955 S.W.2d 102, 104 (Tex.Crim.App. 1997).

In the case before the Court, the officer was directed to the vehicle driven by appellant as a result of the observations of a civilian witness at a drive-in restaurant. The

6

record reveals that the witness called the Garza County dispatch when appellant left the drive-in and notified dispatch of her concerns regarding appellant consuming alcohol and driving. The witness identified herself and described her encounter with appellant. Further, based upon her observations, the witness opined that appellant was continuing to consume alcohol. This information, along with general description of the vehicle and the number of occupants was relayed to the deputy sheriff. Upon seeing a vehicle matching the description of the vehicle with the described number of occupants, the deputy turned around and followed the vehicle. Upon following the vehicle driven by appellant and pulling up beside the vehicle, neither occupant would look at the deputy or in any manner make eye contact with him even though the occupants had previously made eye contact with the deputy when he met the vehicle before turning around to pursue their vehicle. Additionally, the record reflects that the vehicle driven by appellant suddenly slowed to a speed well below the speed limit when the deputy was behind them. When all of these facts are taken together, it is apparent that the decision to stop appellant's vehicle was based upon a reasonable suspicion that is supported by the record. Citizen, 39 S.W.3d at 370. Accordingly, the trial court did not abuse its discretion in overruling appellant's motion to suppress. Oles, 993 S.W.2d at 106.

## Deadly Weapon Finding

Appellant challenges both the legal and factual sufficiency of the evidence to support the jury finding of a deadly weapon. When both legal and factual sufficiency are attacked we must first address the issue of legal sufficiency. See Clewis v. State, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996).

7

In assessing the legal sufficiency of the evidence, we review all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); Ross v. State, 133 S.W.3d 618, 620 (Tex.Crim.App. 2004). In conducting a legal sufficiency review, an appellate court may not sit as a thirteenth juror, but rather must uphold the jury's verdict unless it is irrational or unsupported by more than a mere modicum of evidence. Moreno v. State, 755 S.W.2d 866, 867 (Tex.Crim.App. 1988).

To sustain a deadly weapon finding, the evidence must show that the object in question meets the requirement of a deadly weapon, see TEX. PENAL CODE ANN. § 1.07(a)(17)(B) (Vernon 2003); the deadly weapon was used during the transaction from which the conviction was obtained, see Ex parte Jones, 957 S.W.2d 849, 851 (Tex.Crim.App. 1997); and that other people were put in actual danger, Cates v. State, 102 S.W.3d 735, 738 (Tex.Crim.App. 2003). A motor vehicle may become a deadly weapon if used in a manner capable of causing death or serious bodily injury. Ex parte McKithan, 838 S.W.2d 560, 561 (Tex.Crim.App. 1992).

In reviewing the evidence at trial, we turn to the testimony of the deputy sheriff who answered the dispatch. On direct examination he stated, "There was moderate traffic on South 84." The deputy then agreed with the State's attorney that the highway in question was "pretty frequented." Upon cross-examination, the deputy further testified he observed no dangerous maneuvers or actions in appellant's driving during the period he followed appellant's vehicle. The DPS trooper testified that he arrived on the scene after the initial

8

stop had been completed.  Both officers opined that driving a vehicle while intoxicated exposed the public to some sort of risk.  When we view this evidence in the light most favorable to the jury's verdict, we are left with the following: 1) there was no testimony of any other vehicles on the road with appellant, only a general observation that traffic at the time on the day in question was moderate, 2) appellant drove in a manner that violated no traffic laws, and 3) no other witness was present when appellant was operating the vehicle. The evidence thus produced amounts to nothing more than a "hypothetical risk" to the driving public.  Cates, 102 S.W.3d at 738.  As such, the evidence is not legally sufficient to sustain the jury's verdict.  See Drichas v. State, 175 S.W.3d 795, 798 (Tex.Crim.App. 2005).  Accordingly, we sustain appellant's issue regarding the legal sufficiency of the evidence and modify the judgment deleting the deadly weapon finding.  See TEX. R. APP. P. 43.2(b).  Because we have sustained appellant's issue regarding the legal sufficiency of the evidence to support a deadly weapon finding, we need not address the issue regarding the factual sufficiency of the evidence on the question of the deadly weapon finding.

Conclusion

Having overruled appellant's first two issues and deleted the affirmative finding that a deadly weapon was used during the commission of the offense, we affirm the judgment as modified.

Mackey K. Hancock<br>Justice

Publish.

9