COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| JASON CASTILLO, | § | No. 08-07-00159-CR |
| Appellant, | § | Appeal from |
| v. | § | 384th District Court |
| THE STATE OF TEXAS, | § | of El Paso County, Texas |
| Appellee. | § | (TC # 20040D05703) |
| | § | |

## O P I N I O N

Jason Castillo appeals the trial court's denial of his motion to suppress. Appellant alleges that the stop, arrest, and search of his person were performed without a warrant, probable cause, or reasonable suspicion. He ultimately pled guilty to the offense of possession of a controlled substance and was sentenced to seven years' imprisonment. We overrule his sole point and affirm the conviction.

### FACTUAL BACKGROUND

Detective Ruben Cardenas of the narcotics unit of the El Paso Police Department testified at the suppression hearing. On the day of the offense, he and Detective Barry Alvarez engaged in narcotics interdiction at the Greyhound Bus Station. The detectives were dressed in plain clothes standing where the passengers boarded the bus. In particular, they were watching the noon bus to Dallas. At around 11:45 a.m., the last person boarded the bus. That passenger was Appellant.

Cardenas noticed several things about Appellant as he approached the bus: (1) his late arrival; (2) he had no luggage other than a backpack; (3) his hands trembled when he handed his

ticket to the bus driver; (4) his shoes appeared tight on him and were "bulging upwards";[1] and (5) he was walking awkwardly. As Appellant boarded the bus, Cardenas said, "Excuse me." When Appellant turned around to respond, Cardenas displayed a badge and advised that he was a member of a Drug Enforcement Agency task force. Cardenas asked if he could speak with Appellant about his bus trip. At that point, Cardenas turned his back to Appellant and walked down the steps and off of the bus. Appellant followed him.

Once outside the bus, Cardenas introduced Detective Alvarez and then asked Appellant "if he had been busy in El Paso" and what his purpose was. Appellant said he was in El Paso "to check it out," and that he was from Dallas. Cardenas also asked Appellant whom he was visiting and where he was staying. Appellant answered that he was not visiting anyone in particular, and that he did not remember the name of the hotel in which he stayed. When asked how long his stay was, Appellant replied, "a few days" but he could not recall how many days he had been in town. During the encounter, Appellant was slow to answer; his speech was hesitating, and stuttering at points. Appellant also exhibited an increasing level of nervousness.

Cardenas asked Appellant for consent to search his backpack and Appellant consented. As Alvarez searched it, Cardenas asked to see Appellant's identification. Appellant produced Texas identification showing an address in Waco, Texas. Alvarez found no contraband inside the backpack. Next, Cardenas asked Appellant if he would remove one of his shoes so that Alvarez could inspect it. Again, Appellant complied. Alvarez found a plastic bag underneath the sole containing a white, powdery substance that field-tested positive for cocaine.

## MOTION TO SUPPRESS

Appellant argues that the confrontation between Appellant and the police was not a

---

[1] Detective Cardenas was aware of several cases in which persons transported narcotics in their shoes.

"consensual encounter," but an outright seizure without reasonable suspicion of criminal wrongdoing violating his Fourth Amendment rights.

### Standard of Review

We review a trial court's ruling on a motion to suppress using the bifurcated standard of review articulated in *Guzman v. State,* 955 S.W.2d 85 (Tex.Crim.App. 1997). *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex.Crim.App. 2000); *Krug v. State,* 86 S.W.3d 764, 765 (Tex.App.--El Paso 2002, pet. ref'd). Because the trial judge is the sole trier of fact regarding the credibility of and the weight to be given to a witness's testimony, we do not engage in our own factual review of the trial court's decision. *See State v. Ross,* 32 S.W.3d 853, 855 (Tex.Crim.App. 2000); *Romero v. State,* 800 S.W.2d 539, 543 (Tex.Crim.App. 1990). Almost total deference is given to the trial court's ruling on questions of historical fact and application of law to fact questions that turn on an evaluation of credibility and demeanor. *Montanez v. State,* 195 S.W.3d 101, 106 (Tex.Crim.App. 2006), *citing Guzman,* 955 S.W.2d at 89. A trial court's rulings on mixed questions of law and fact that do not turn on the credibility and demeanor of witnesses are reviewed *de novo. Id.*

Where, as here, the trial court files findings of fact and conclusions of law, the court's findings will not be disturbed on appeal absent an abuse of discretion. *State v. Wood,* 828 S.W.2d 471, 474 (Tex.App.--El Paso 1992, no writ). If the court's findings are supported by the record, then we are not at liberty to disturb them, and we will only address the question of whether the trial court improperly applied the law to the facts. *Wood,* 828 S.W.2d at 474. A court's ruling regarding a motion to suppress will be upheld if the decision made was based on any correct theory of law applicable to the case. *Ross,* 32 S.W.3d at 856.

### Police Encounter

The Court of Criminal Appeals has recognized three types of interactions between law

enforcement officers and citizens: (1) encounters; (2) investigative detentions; and (3) arrests. *State v. Perez,* 85 S.W.3d 817, 819 (Tex.Crim.App. 2002). In an encounter, a police officer may approach an individual in a public place, ask him whether he is willing to answer questions, and pose questions to the person, if he is willing to listen. *Id.* Such interactions are consensual and do not trigger the Fourth Amendment, so long as a reasonable person would feel free to disregard the police and go about his business. *Hunter v. State,* 955 S.W.2d 102, 104 (Tex.Crim.App. 1997). When the questioning becomes an investigative detention, the detention must be supported by a reasonable suspicion. *Citizen v. State,* 39 S.W.3d 367, 370 (Tex.App.--Houston [1st Dist.] 2001, no pet.).

An investigative detention requires an officer to have a reasonable suspicion to believe that an individual is involved in criminal activity. *Balentine v. State,* 71 S.W.3d 763, 768 (Tex.Crim.App. 2002). The purpose of an investigative detention is to establish a person's identity or to maintain the status quo, while an officer obtains more information. *Comer v. State,* 754 S.W.2d 656, 657 (Tex.Crim.App. 1986). The reasonableness" of a temporary detention must be examined in terms of the totality of the circumstances and will be justified when the detaining officer has specific articulable facts, which, taken together with rational inferences from those facts, lead him to conclude that the person detained actually is, has been, or soon will be engaged in criminal activity. *Id.* The controlling question in determining whether there was a detention is whether the actions of the officer would have made a reasonable person feel that he was not free to decline the officer's requests or otherwise terminate the encounter. *State v. Velasquez,* 994 S.W.2d 676, 679 (Tex.Crim.App. 1999).

A seizure or detention does not occur simply because a police officer approaches an individual and asks him a few questions. *Florida v. Bostick,* 501 U.S. 429, 434, 111 S.Ct. 2382, 2386, 115 L.Ed.2d 389 (1991). So long as a reasonable person would feel free to disregard the

officer and go about his business, the encounter is consensual and will not trigger Fourth Amendment protection. *Id.* Even when officers have no basis for suspecting a particular individual, they may ask him general questions, ask to examine his identification, and request consent to search his belongings, so long as the police do not convey a message that compliance with their requests is required. *See id.* at 434-35, 111 S.Ct. at 2386. The issue is whether the police conduct would have communicated to a reasonable person that he was not free to decline the officer's requests or otherwise terminate the encounter. *Velasquez,* 994 S.W.2d at 679.

This court has previously considered the manner of drug interdiction at the Greyhound Bus terminal in El Paso. *Lopez v. State*, No. 08-05-00283-CR, 2006 WL 2382432 (Tex.App.--El Paso, 2006, no pet.)(not designated for publication). There, Detectives Cardenas and Alvarez approached Lopez in plain clothes aboard the bus. They did not inform Lopez that he had the right to refuse consent, nor did they use written consent forms. *Id*. at 4. The detectives' weapons were not apparent because they were concealed under t-shirts. This court found however, that the detectives approached Lopez in a friendly manner, did not block him at his seat, and displayed no weapons. *Id*. at 5. There was no evidence that the detectives suggested they would get a search warrant if Lopez did not consent. *Id*. Lopez argued that the encounter was not consensual because he did not feel free to decline to do what the detectives told him to do in the close confines of the bus. *Id*. Therefore, he argued that under the totality of the circumstances, a reasonable person would have believed that he was not free to leave the bus and would have yielded to the detectives cumulative show of authority. *Id*. at 4. He also argued that the detectives did not inform him that he had the right to refuse consent. *Id*. This court held that failure to inform an individual that he can refuse consent does not automatically render the encounter involuntary; rather, the failure to so advise is only one factor in determining whether the encounter constitutes a seizure. *See Velasquez*, 994

S.W.2d at 679; *Johnson v. State*, 68 S.W.3d 644, 653 (Tex.Crim.App. 2002). Ultimately, this court held that the detectives did not convey a message that compliance with their requests was required and that a reasonable person would have felt free to terminate the encounter. Therefore, the encounter was consensual and not a detention. *Lopez*, 2006 WL 2382432 at 5.

This case is remarkably similar. Here, the detectives simply approached Appellant in a public place and asked him whether he would be willing to answer questions. They approached in a friendly manner, did not block Appellant into his seat, and no weapons were displayed. There was no evidence that the detectives in any way suggested that if Appellant did not consent, the officers would get a search warrant. Viewing the totality of the circumstances, we conclude that a reasonable person would have believed he was free to stay onboard and need not yield to the detectives' requests.

### *Consent to Search*

Under the Fourth and Fourteenth Amendments to the United States Constitution, a search conducted without a warrant issued with probable cause is *per se* unreasonable. *Schneckloth v. Bustamonte,* 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973). Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Id.* at 219, 93 S.Ct. at 2043-44; *Carmouche,* 10 S.W.3d at 331. The test for a valid consent to search requires the consent to be voluntary, and voluntariness is a question of fact to be determined from all the circumstances. *Schneckloth,* 412 U.S. at 248-49, 93 S.Ct. at 2059; *Carmouche,* 10 S.W.3d at 331. To be valid, consent to search must be positive and unequivocal and must not be the product of duress or coercion, either express or implied. *Carmouche,* 10 S.W.3d at 331. The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of objective reasonableness, i.e., what the typical reasonable person would have understood by

the exchange between the officer and the suspect. *Simpson v. State,* 29 S.W.3d 324, 330 (Tex.App.--Houston [14th Dist.] 2000, pet. ref'd), *citing Florida v. Jimeno,* 500 U.S. 248, 251, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991). When relying upon consent to justify the lawfulness of a search under the Fourth Amendment, the State must prove by a preponderance of the evidence that the consent was voluntary. *United States v. Matlock,* 415 U.S. 164, 177, 94 S.Ct. 988, 996, 39 L.Ed.2d 242 (1974).

The burden of proving that consent to search was freely given falls upon the State. Although the United States Constitution only requires proof by a preponderance of the evidence, the Texas Constitution imposes a higher standard, requiring the State to show by clear and convincing evidence that consent to search was freely given. *Id*.; *State v. Ibarra*, 953 S.W.2d 242, 245 (Tex.Crim.App. 1997).

Voluntariness of consent is determined by looking at the "totality of all the surrounding circumstances--both the characteristics of the accused and the details of the interrogation." *Reasor v. State*, 12 S.W.3d 813, 818 (Tex.Crim.App. 2000), *citing Schneckloth v. Bustamonte*, 412 U.S. at 226, 93 S.Ct. at 2041. A number of factors enter the determination of whether consent was voluntarily given: whether the consenting person is in custody; whether he or she was arrested at gunpoint; whether the person was informed that he or she did not have to consent; the constitutional advice given to the accused; the length of detention; the repetitiveness of the questioning; and the use of physical punishment. *Laney v. State*, 76 S.W.3d 524, 532 (Tex.App.--Houston [14th Dist.] 2002, pet. granted), *citing Carmouche*, 10 S.W.3d at 331; *Reasor*, 12 S.W.3d at 818. Courts also consider the characteristics of the person given consent in the determination. These include the youth, education, and intelligence of the accused. *Id*., *citing Reasor*, 12 S.W.3d at 818.

Appellant argues that while he was not in actual, physical custody, he was restrained. He was confronted by badges, he was not told he could refuse to consent, he was not provided with

constitutional advice, and after the initial search of his luggage yielded nothing, the search and questioning became repetitive. But according appropriate deference under the requisite standard of review, we conclude that the record supports the trial court's findings that consent was voluntarily given. We overrule Appellant's sole point and affirm the conviction.

August 28, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating

(Do Not Publish)