Opinion issued April 8, 2010




     











In The
Court of Appeals
For The
First District of Texas




NO. 01-08-00692-CR




ERIK DOUGLAS BORGFELD, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 182nd District Court
Harris County, Texas
Trial Court Cause No. 1152984




MEMORANDUM OPINION

          On June 23, 2008, a jury convicted appellant, Erik Douglas Borgfeld, of
possession of cocaine weighing less than one gram.


 Appellant stipulated to his first
and second enhancement paragraphs, and the trial court assessed punishment at four
years’ imprisonment. In two issues, appellant argues that (1) the evidence was legally
and factually insufficient to support the jury’s finding that he possessed cocaine, and
(2) the trial court erred in denying his motion to suppress the crack pipe that the
police recovered from the car he was driving and his statement concerning that pipe.
          We affirm.
BACKGROUND
          Around 11:00 p.m. on February 8, 2008, Officer B. Russell encountered
appellant’s car parked in a remote section of a parking lot in which all of the
associated businesses were closed. Officer Russell drove up behind the parked car,
used his spotlight to illuminate it, and then contacted his dispatcher to see whether
the car had been reported as stolen. While still in his car, Officer Russell saw a small
clear or white object fly from the front seat of appellant’s car to the back seat. After
learning that the car had not been reported as stolen, Officer Russell approached the
car and asked appellant for his identification. While waiting for appellant to produce
his identification, Officer Russell used his flashlight to look into the “backseat area”
of the car, where he saw “[a] clear glass pipe with a Brillo pad in it on the floor board
[of the] passenger[’s] side.” Officer Russell then asked appellant to step out of the
car, placed appellant in the back of his patrol car, received appellant’s permission to
search the car, and retrieved the crack pipe. He field tested the crack pipe, and the
test indicated the presence of cocaine. Appellant then stated, “Can I get a ticket? It’s
mine.” Appellant filed a motion to suppress the crack pipe, and his statements
regarding it, claiming that there was no probable cause to search or arrest appellant.
          At trial, the State called Officer Russell and Kay McLane, a forensic chemist
for the Harris County Medical Examiner’s Office. The defense called appellant. 
Officer Russell testified that on the night of appellant’s arrest he was working a shift
for the “Zero Tolerance Task Force,” in which he would not respond to any
emergency calls but would rather patrol looking for potential criminal activity in
North Houston. Around 11:00 p.m., he was in a parking lot when he noticed
appellant sitting in a green car. He testified that this was suspicious because all of the
associated businesses were closed, it was a high crime area, and the car was parked
in a remote section of the parking lot. Officer Russell then testified that he pulled in
behind the car, illuminated it with his spotlight, and radioed his dispatcher to see
whether the car had been reported as stolen. As he waited for his dispatcher to
respond, he saw a small object fly from the front of the car to the back of the car. He
testified that he had a clear view of the inside of the car due to both his spotlight and
the ambient lighting. 
          After discovering that the car had not been reported as stolen, Officer Russell 
approached it and asked appellant for his identification. He testified that appellant
looked nervous, was fidgeting, and struggled to get his identification out of his wallet. 
As appellant struggled to produce his identification, Officer Russell, using his
flashlight, looked into the backseat area of the car. When he did this, he saw what he
believed to be a crack pipe on the floor of the passenger’s side. At that point he asked
appellant to exit the car, detained him, and placed him in the back of his patrol car. 
          Appellant gave Officer Russell permission to search his car. Officer Russell
then retrieved the pipe, noticed that it had a white powdery residue in it, and tested
it for cocaine. The test indicated the presence of cocaine. After learning that the
District Attorney’s Office would accept the charges, appellant asked Officer Russell
whether he could merely receive a ticket for the offense, and he admitted that the
crack pipe belonged to him. 
          At trial, Officer Russell admitted on cross-examination to having difficulty
remembering specific details of appellant’s arrest. Appellant objected to the
admission of the crack pipe, and his statement admitting that it was his, claiming that
Officer Russell did not have probable cause to search or arrest appellant. The trial
court overruled the objection. McLean testified that she performed two tests on the
residue in the pipe and that the tests confirmed that the substance in the pipe was
cocaine.  
          Appellant testified in his own defense. He conceded that he was in the parking
lot on the night of his arrest, but he claimed that he was transferring phone numbers
from one cell phone to another. Appellant testified that the car belonged to his
brother, who had given him permission to drive it over the past two to three weeks. 
He testified that he had gone to the T-Mobile store across the street around 9:00 p.m.
to see if their employees could transfer the numbers from his old phone to his new
phone. He then went to eat at a CiCi’s pizza restaurant, then got into his car, drove
for a short distance, stopped in the parking lot, and began writing down the cell phone
numbers from his old phone onto a pad of paper. 
          Appellant testified that a patrol car pulled up behind him, and Officer Russell
asked him to exit his vehicle, immediately placed him in handcuffs, and then asked
for permission to search the car.


 Appellant testified that he consented to Officer
Russell’s search. After placing appellant in the back of his patrol car, Officer Russell
searched the car. Appellant testified that he was never shown the crack pipe, but that
Officer Russell merely said “Aha, that’s what I thought.” Appellant further testified
that he admitted to Officer Russell that he had been arrested two times before for
possession of cocaine. Appellant then testified that he had a drug problem, that he
believed that the crack pipe was planted in his car, and that his brother did not do
drugs. POSSESSION & CONTROL
A.      Standard of Review
          When an appellant challenges both the legal and factual sufficiency of the
evidence, we must first determine whether the evidence was legally sufficient to
support the verdict. Harmond v. State, 960 S.W.2d 404, 406 (Tex. App.—Houston
[1st Dist.] 1998, no pet.). 
          We review the legal sufficiency of the evidence by viewing the evidence in the
light most favorable to the verdict to determine whether any rational trier of fact
could have found the essential elements of the crime beyond a reasonable doubt. 
King v. State, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000). Although our analysis
considers all evidence presented at trial, we may not re-weigh the evidence and
substitute our judgment for that of the fact finder. Id. 
          We review the factual sufficiency of the evidence by viewing all of the
evidence in a neutral light, and we will set the verdict aside only if the evidence is so
weak that the verdict is clearly wrong and manifestly unjust or the verdict is against
the great weight and preponderance of the evidence. Johnson v. State, 23 S.W.3d 1,
10–11 (Tex. Crim. App. 2000). In conducting a factual sufficiency review, the finder
of fact resolves disputed issues of fact; “an appellate court cannot substitute its
judgment for that of the factfinder . . . .” Clewis v. State, 922 S.W.2d 126, 133 (Tex.
Crim. App. 1996). “An appellate court judge cannot conclude that a conviction is
‘clearly wrong’ or ‘manifestly unjust’ simply because, on the quantum of evidence
admitted, he would have voted to acquit had he been on the jury.” Watson v. State,
204 S.W.3d 404, 417 (Tex. Crim. App. 2006). Regarding the second basis for a
finding of factual insufficiency, “an appellate court must . . . be able to say, with
some objective basis in the record, that the great weight and preponderance of the 
. . . evidence contradicts the jury’s verdict before [the court] is justified in exercising
its appellate fact jurisdiction to order a new trial.” Id.
B.      Legal SufficiencyIn his first issue, appellant specifically argues that the evidence is legally
insufficient to show that he exercised actual care, control, or management over the
crack pipe.
          The State charged appellant with the knowing possession of less than one gram
of cocaine. See Tex. Health & Safety Code Ann. § 481.112 (Vernon 2003). To
prove unlawful possession of a controlled substance, the State must prove that the
accused (1) exercised care, custody, control, or management over the substance,
(2) was conscious of his connection with it, and (3) knew what it was. See id. 
§ 481.002(38) (Vernon 2003); Swarb v. State, 125 S.W.3d 672, 684 (Tex.
App.—Houston [1st Dist.] 2003, pet. dism’d). 
          When contraband is not found on the accused person or when the accused is
not in exclusive possession of the place where the contraband was found, we cannot
conclude that the accused had knowledge and control over the contraband unless the
State establishes a link between the accused and the contraband, i.e., independent
facts and circumstances that connect the accused to the contraband so as to suggest
that the accused had knowledge of the contraband and exercised control over it. 
Rhyne v. State, 620 S.W.2d 599, 601 (Tex. Crim. App. 1981); Robinson v. State, 174
S.W.3d 320, 324–25 (Tex. App.—Houston [1st Dist.] 2005, pet. ref’d); Swarb, 125
S.W.3d at 684. The link may be established through either direct or circumstantial
evidence. See Brown v. State, 911 S.W.2d 744, 746–47 (Tex. Crim. App. 1995).
          The link terminology does not constitute a unique legal rule, but is only a
shorthand way of expressing what must be proven to establish that the narcotics were
possessed knowingly or intentionally. Id. at 747. Texas courts have established
several factors that may help to establish a link between the accused and the
contraband, including whether (1) the defendant was present when the narcotics were
found; (2) the contraband was in plain view; (3) the defendant was in proximity to the
narcotics and had access to them; (4) the defendant was under the influence of
narcotics when arrested; (5) the defendant possessed other contraband; (6) the
defendant made incriminating statements when arrested; (7) the defendant attempted
to flee; (8) the defendant made furtive gestures; (9) the odor of the narcotic was
present; (10) the defendant owned or had the right to possess the place where the
narcotics were found; (11) the narcotics were found in an enclosed place; (12) the
amount of narcotics found was significant; (13) the defendant possessed a weapon;
and (14) the defendant possessed a large amount of cash. Swarb, 125 S.W.3d at 684. 
Although the courts have identified multiple factors relevant to establishing the
necessary link between a defendant and contraband, the number of factors supported
by the evidence is not as important as the “logical force” they collectively create to
show that a crime has been committed. Roberson v. State, 80 S.W.3d 730, 735 (Tex.
App.—Houston [1st Dist.] 2002, pet. ref’d). Evidence that links the accused to the
narcotics must establish a connection that is more than fortuitous. Brown, 911
S.W.2d at 747. 
          Here, appellant’s interaction with the police began when Officer Russell
spotted a parked car in an otherwise deserted section of a parking lot at night after the
surrounding stores had closed. The officer illuminated the car with his spotlight and
saw a small white or clear object fly from the front seat of appellant’s car to the back. 
After Officer Russell asked appellant for his driver’s license, he described appellant
as “nervous” and “fidgeting” and noted that appellant struggled to get his license out
of his wallet. While appellant struggled with his driver’s license, Officer Russell
used his flashlight to look into the back of appellant’s car, where he saw “a clear glass
pipe with a Brillo pad in it on the floor board . . . .” At that point, Officer Russell
placed appellant in the back of the patrol car, and he determined that the glass tube
was a crack pipe. Appellant then asked Officer Russell, “Can you just write me a
ticket for that?,” and stated, “It’s mine.” At trial, appellant also admitted that he had
two prior arrests for possessing less than a gram of cocaine, that he had a drug
problem, and that his brother did not do drugs. 
          Through the testimony of Officer Russell and appellant, the State established
many of the linking factors that serve to connect a defendant with contraband. 
Appellant testified that he had the right to use his brother’s car; he had been driving
it for two to three weeks; he was in the car alone when Officer Russell discovered the
crack pipe; and he testified that his brother did not do drugs. Further, when Officer
Russell approached him, appellant made furtive gestures and appeared nervous. 
Lastly, the contraband was in plain view, in an enclosed space, and appellant was in
its proximity.
          Despite the existence of many of the factors that may be used to help establish
a link between the accused and the contraband, appellant argues that these were
insufficient to link him to the cocaine. Specifically, appellant contends that the car
belonged to his brother, that no testimony was elicited concerning when others were
last in the car, and that at trial he denied being aware of the crack pipe. Therefore,
he contends that the State did not prove that he exercised actual care, custody, control
or management over the contraband. As we have already stated, however, the number
of existing factors supported by the evidence is not as important as the “logical force”
they collectively create to prove the commission of the offense. See Roberson, 80
S.W.3d at 735–36 (“A factor that contributes to sufficiency in one situation may be
of little value under a different set of facts. We will examine all the factors possibly
linking appellant to the cocaine . . . .” ) (citations omitted). Here, the logical force of 
the factors linking appellant to the cocaine is sufficient for us to determine that a
rational trier of fact could have found the essential elements of the crime beyond a
reasonable doubt. See id; Westbrook, 29 S.W.3d at 111; King, 29 S.W.3d at 562.
          Viewing all of the evidence in the light most favorable to the verdict, we
conclude that a jury could have found beyond a reasonable doubt that appellant
exercised care, custody, control, or management of the cocaine. See Westbrook, 29
S.W.3d at 111; King, 29 S.W.3d at 562.
C.      Factual Sufficiency
          In his first issue, appellant also asserts that the evidence is factually insufficient
to show that he exercised actual care, control, or management over the cocaine. 
Specifically, he contends that the proof of his guilt is so weak as to undermine
confidence in the jury’s verdict because the State failed to show that he possessed the
crack pipe in light of appellant’s testimony that he did not know it was in the car. 
Here, appellant argues that because he and Officer Russell testified differently, and
Officer Russell had difficulty remembering certain aspects of the arrest, we should
find the evidence to be factually insufficient. 
          As we have already stated, the number of existing factors supported by the
evidence is not as important as the “logical force” they collectively create to prove
that a crime has been committed. See Roberson, 80 S.W.3d at 735. Furthermore,
conflicts in determinations of credibility are resolved by the fact finder. Clewis, 922
S.W.2d at 133–34 (stating that in conducting factual sufficiency review appellate
courts “[do] not review the factfinder’s weighing of the evidence.”). We cannot say
that this evidence is so weak as to undermine confidence in the jury’s verdict. 
Watson, 204 S.W.3d at 417. 
          Thus, after neutrally examining all of the evidence, we hold that the proof of
guilt was not so weak that the verdict is clearly wrong and manifestly unjust; nor is
the verdict against the great weight and preponderance of the evidence. See Johnson,
23 S.W.3d at 10–11.
          We overrule appellant’s first issue.
MOTION TO SUPPRESS
          In his second issue, appellant argues that Officer Russell did not have probable
cause to detain him, and therefore the discovery of the crack pipe and appellant’s
statement were “fruit of the poisonous tree.” Because appellant contends that these
were “fruit of the poisonous tree,” he argues that the trial court erred in failing to
grant his motion to suppress.
          In reviewing the trial court’s ruling on a motion to suppress evidence, we apply
a bifurcated standard of review. Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim.
App. 2000); Blake v. State, 125 S.W.3d 717, 722 (Tex. App.—Houston [1st Dist.]
2003, no pet.). We give almost total deference to the trial court’s determination of
historical facts that depend on credibility, while we conduct a de novo review of the
trial court’s application of the law to those facts. Carmouche, 10 S.W.3d at 327
(citing Guzman v. State, 955 S.W.2d 85, 88–89 (Tex. Crim. App. 1997)). If, after a
hearing on a motion to suppress, the trial court did not file findings of fact, as here,
we view the evidence in the light most favorable to the trial court’s determination and
we assume that the trial court made implicit findings of fact in support of its
determination if those findings are supported by the record. State v. Gray, 158
S.W.3d 465, 467 (Tex. Crim. App. 2005) (citing State v. Ross, 32 S.W.3d 853,
855–56 (Tex. Crim. App. 2000)). If the trial court’s determination is correct on any
theory of law applicable to the case, we will uphold the determination. Id. 
A.      Admissibility of Crack Pipe
          There are three categories of interaction between police officers and civilians:
(1) encounters; (2) investigative detentions; and (3) seizures. State v. Perez, 85
S.W.3d 817, 819 (Tex. Crim. App. 2002); Pennywell v. State, 127 S.W.3d 149, 152
(Tex. App.—Houston [1st Dist.] 2003, no pet.). A police officer does not need
reasonable suspicion before speaking with a person in a public place because
speaking does not involve a seizure and therefore does not implicate the Fourth
Amendment. See Perez, 85 S.W.3d at 819; Pennywell, 127 S.W.3d at 152; see also
Citizen v. State, 39 S.W.3d 367, 370 (Tex. App.—Houston [1st Dist.] 2001, no pet.)
(holding that police officers do not have to provide any justification for encounters). 
“Merely asking questions does not transform an encounter into a detention.” 
Pennywell, 127 S.W.3d at 152 (citing Stoutner v. State, 36 S.W.3d 716, 720 (Tex.
App.—Houston [1st Dist.] 2001, pet. ref’d). “The test of whether the interaction has
progressed beyond an encounter is whether the officer ‘would have communicated
to a reasonable person that the individual was not free to refuse the officer’s requests
or otherwise terminate the encounter.’” Id. (quoting Citizen, 39 S.W.3d at 370). 
Incriminating evidence discovered during an encounter “is nonetheless admissible at
trial if it is determined that as of the time of the discovery no seizure had yet
occurred.” Hayes v. State, 132 S.W.3d 147, 152 (Tex. App.—Austin 2004, no pet.).
          “An investigative detention occurs when a law enforcement officer confronts
an individual, who then yields to a display of authority and is temporarily detained
without a warrant.” Pennywell, 127 S.W.3d at 153. An investigative detention is
permissible if the police “officer reasonably suspects that the individual is, has been,
or soon will be engaged in criminal activity.” Id. (citing Citizen, 39 S.W.3d at 370). 
Reasonable suspicion exists when an officer can point to specific articulable facts
that, taken together with rational inferences from those facts, reasonably warrant
intrusion. Id. 
          Here, Officer Russell encountered appellant’s automobile in a high crime area
in an otherwise empty parking lot at night after all of the surrounding businesses were
closed. While behind appellant’s car, Officer Russell saw an object fly into the
backseat. After Officer Russell walked up to appellant’s car, asked him what he was
doing there, and asked appellant for his identification, he looked into the back of
appellant’s car and noticed a clear glass pipe with a Brillo pad in it on the floor board
behind the passenger’s seat. Nothing in the record indicates that Officer Russell used
his sirens, or otherwise indicated to appellant that he was not free to terminate the
encounter. Thus, Officer Russell’s initial discovery of the crack pipe occurred during
an encounter. Pennywell, 127 S.W.3d at 152 (holding that interaction constituted
mere encounter when police officer approached man walking at night, stopped his
patrol car, asked him what he was doing in that apartment complex, and asked which
apartment he intended to visit). Incriminating evidence discovered during an
encounter is admissible at trial. See Hayes, 132 S.W.3d at 152. 
          After seeing the crack pipe, Officer Russell reasonably suspected that appellant
was or had been engaged in criminal activity. He then temporarily detained appellant
in the back seat of his patrol car to investigate further. See Pennywell, 127 S.W.3d
at 153 (stating that investigative detention is allowable when police officer
reasonably suspects that “the individual is, has been, or soon will be engaged in
criminal activity”). Appellant himself testified that he gave Officer Russell
permission to search his car. Because we determine that Officer Russell lawfully
encountered and detained appellant, the “fruit of the poisonous tree” doctrine does
not apply. See id. at 153–54 (holding that because seizure of evidence was not
product of unlawful detention it was not “fruit of the poisonous tree.”). Therefore,
the crack pipe was admissible.
 
B.      Admissibility of the Statement
          Finally, appellant complains that his statement concerning the crack pipe
should be suppressed because it was given in violation of his Miranda warnings.


 
Article 38.21 of the Code of Criminal procedure provides that “[a] statement of an
accused may be used in evidence against him if it appears that the same was freely
and voluntarily made without compulsion or persuasion.” Tex. Code Crim. Proc.
Ann. art. 38.21 (Vernon 2006); Oursbourn v. State, 259 S.W.3d 159, 169 (Tex. Crim.
App. 2008). A statement is not voluntary if it is given in violation of Miranda v.
Arizona, which is codified in Article 38.22 of the Code of Criminal Procedure. Tex.
Crim. Proc. Ann. art. 38.22, § 2 (Vernon 2006). 
          A person must receive a Miranda warning when he is subject to a custodial
interrogation. Miranda v. Arizona, 384 U.S. 436, 444, 86 S. Ct. 1602, 1612 (1966). 
If, however, a statement is not the product of a custodial interrogation, then neither
Miranda nor article 38.22 prohibits the admission of that statement. Tex. Code
Crim. Proc. Ann. art. 38.22, § 5; Miranda, 384 U.S. at 444, 86 S. Ct. at 1612;
Galloway v. State, 778 S.W.2d 110, 112 (Tex. App.—Houston [1st Dist.] 1989, no
pet.). Custodial interrogations occur when law enforcement officers initiate
questioning of a person who has been taken into custody or otherwise deprived of
freedom of action in any significant way. Miranda, 384 U.S. at 444, 86 S. Ct. at
1612; Roquemore v. State, 60 S.W.3d 862, 868 (Tex. Crim. App. 2001) (stating that
“A custodial interrogation occurs when a defendant is in custody and is exposed ‘to
any words or actions on the part of the police . . . that [the police] should know are
reasonably likely to elicit an incriminating response.’”) (quoting Rhode Island v.
Innis, 446 U.S. 291, 300–01, 100 S. Ct. 1682, 1689–90 (1980)). “At trial, the
defendant bears the initial burden of proving that a statement was the product of
‘custodial interrogation.’” Herrera v. State, 241 S.W.3d 520, 526 (Tex. Crim. App.
2007).
          Officer Russell lawfully encountered and detained appellant. After receiving
permission to search the vehicle, placing appellant in the back of the police car, and
retrieving the crack pipe, Officer Russell contacted the district attorney’s office to
determine whether it would accept the charges against appellant. At that point,
appellant, without any prompting from Officer Russell, asked whether he could
receive only a ticket and admitted that an unspecified object, reasonably inferred to
be the crack pipe, belonged to him. Appellant’s statement was not made in response
to questions or actions by Officer Russell and was instead an unsolicited and
voluntary statement made by appellant in an apparent attempt to avoid going to jail. 
Appellant has not shown that his un-prompted statement was the product of a
custodial interrogation. See Miranda, 382 U.S. at 444, 86 S. Ct. at 1612; Tex. Code
Crim. Proc. Ann. art 38.22, § 5 (stating that article 38.22 does not apply to
statements that do not “stem from the result of custodial interrogation”); Herrera, 241
S.W.3d at 526 (stating that “[a]t trial the defendant bears the initial burden of proving
that a statement was the product of a ‘custodial interrogation’” and that “[a]rticle
38.22 of the Texas Code of Criminal Procedure governs the admissibility of
statements made by a defendant during custodial interrogation in a criminal
proceeding.”) Therefore, we conclude that the statement was admissible. 
           We overrule appellant’s second issue.
Conclusion
          We affirm the judgment of the trial court.
 
 

 
 
                                                             Evelyn V. Keyes
                                                             Justice
 
Panel consists of Justices Keyes, Sharp, and Massengale.

Do not publish. Tex. R. App. P. 47.2(b).