# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---
## NO. 03-08-00684-CR
---

**Serena Shaunta Williams, Appellant**

**v.**

**The State of Texas, Appellee**

---
### FROM THE DISTRICT COURT OF CALDWELL COUNTY, 421ST JUDICIAL DISTRICT
### NO. 2008-030, HONORABLE TODD A. BLOMERTH, JUDGE PRESIDING
---

## M E M O R A N D U M   O P I N I O N

Serena Shaunta Williams was convicted of one count of possessing a controlled substance, *see* Tex. Health & Safety Code Ann. § 481.115(a) (West Supp. 2009), and three counts of endangering a child, *see* Tex. Penal Code Ann. § 22.041(c) (West Supp. 2009).  The trial court assessed punishment at ten years' community supervision on the possession count and two years' state-jail time on the child-endangerment counts.  The court also assessed fines totaling $10,000.  On appeal, Serena[1] argues that the evidence introduced at trial was legally insufficient to sustain a conviction on any count and factually insufficient to sustain a conviction on the possession count.  We will reverse the judgment and order an acquittal.

---

[1] We refer to appellant as "Serena" to distinguish her from her brothers John Williams and George Williams ("John" and "George," respectively), both of whom we discuss below.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 14, 2007, law enforcement officers went to Serena's apartment to arrest Serena on a child-custody-related charge. The officers knocked on the door, and one of Serena's children answered. The child called out to her mother, and Serena came to the door to speak with the officers. After the officers informed Serena that they were there to arrest her, she became uncooperative and resisted being handcuffed.[2] As the officers proceeded with handcuffing Serena, she called out to her brother John and his girlfriend, suggesting that they were in Serena's apartment.

The officers knew who John was and knew that he had an outstanding arrest warrant. Thus, after subduing Serena, they entered her apartment to apprehend John. John allegedly resisted arrest vigorously. The officers tasered him several times and eventually wrestled him to the ground so that he was lying prone.[3] The officers handcuffed John in that position and lifted him off the ground to remove him from the apartment. As they did so, they saw a partially opened baggie of cocaine on the ground where John had just been lying.[4] Part of the baggie's contents had spilled onto the floor. The baggie had a sticker on it bearing the logo of the comic-book character Batman.

[2] The degree to which Serena resisted is not perfectly clear. Serena was eight-and-a-half months pregnant at the time, and no testifying officer suggested that Serena resisted vigorously. It appears that Serena primarily tried to retreat into her apartment after the officers told her they were there to arrest her, and after the officers pulled her into the hallway she moved her arms around to try to prevent the officers from handcuffing her. The officers did not have to wrestle Serena to the ground, strike her, or use a taser on her, and Serena testified that the officers did not hurt her. Moreover, the State did not charge Serena with resisting arrest.

[3] More than one officer testified that he believed John was able to resist so vigorously because he was high on cocaine. John tested positive for cocaine after he was arrested and taken to the hospital.

[4] The officers testified that they had not seen the baggie of cocaine on the ground before struggling with John.

2

After securing the scene, the officers obtained a warrant to search the rest of Serena's apartment. In executing the search they found several additional baggies of cocaine in a closed, unlocked living-room closet. The baggies were on a shelf towards the top of the closet (roughly eye-level for the investigating officer) and had Batman stickers on them like the baggie found on the floor. Later tests revealed that the baggies contained a total of 2.72 grams of cocaine.

The searching officers also found a pair of men's pants in a bedroom. In the pants was a wallet that contained John's identification card and approximately $1,600 in cash.

The State charged Serena with possessing the cocaine that was found in the living-room closet.[5] It also charged her with three counts of child endangerment as a result of the possession, one for each of the children present in the apartment at the time of her arrest. The children were approximately ten years old, six years old, and nine months old.

At trial, the State called the officers who had participated in the events at Serena's apartment. They testified to the above details and opined that the drugs in Serena's closet presented an immediate danger to Serena's children. They also testified that approximately six months before the incident in question, they had arrested Serena's brother George after finding him with cocaine in the apartment that Serena was renting at the time.[6]

The State also called Lillia Mondragon, a Child Protective Services (CPS) employee who visited Serena at her apartment approximately two weeks after Serena's arrest.[7] Mondragon

---

[5]  The State charged John with possessing the cocaine that was found on the floor. *See Williams v. State*, No. 03-09-00135-CR, 2010 Tex. App. LEXIS 3000 (Tex. App.—Austin Apr. 23, 2010, no pet. h.).

[6]  Serena was not in the apartment when George was arrested—she testified that she was in Oklahoma at the time—and the State did not charge her with anything related to that incident.

[7]  Serena was released shortly after the arrest because her pregnancy was high-risk.

testified that during the visit Serena said she knew that John dealt drugs and should not be in her house, but she refused to sever ties with him because he was family. On cross-examination, Mondragon admitted that Serena also told her that she did not know John had drugs in her apartment on the day she was arrested.

Serena took the stand in her defense. She testified that she did not know John had brought drugs into her apartment and that he had only been there for a matter of hours before the police arrived. She testified that John had called her in the middle of the preceding night and asked if he could come over, as he was in the area and did not want to drive home because he had been drinking. Serena testified that she got out of bed, unlocked her front door so John could let himself in, and then went back to her bedroom to go back to sleep. She testified that when she woke up in the morning and walked out to the living room, John and his girlfriend were sleeping there. She testified that she woke them up and told them to go to her bedroom to continue sleeping while she and her children occupied the living room.[8]

On cross-examination, Serena admitted that the drugs in her closet were theoretically accessible to her two older children, who were intelligent and curious.[9] She also admitted that the drugs' appearance might have piqued her children's interest and that the drugs' presence created a danger to her children. She denied knowing that John was high on cocaine when the officers arrived.

The State impeached Serena by questioning her about her prior conviction for aggravated assault with a deadly weapon. It also questioned Serena about her car. She admitted that

---

[8] The officers testified that when they entered the apartment to look for John, he was standing in a back hallway near the bedroom door.

[9] The State did not suggest through questioning or in closing argument that the drugs were accessible to Serena's youngest child, but it did suggest that Serena's older children might have shared the drugs with her youngest child had they found them.

the car had belonged to her brother George and that he gave it to her when he was incarcerated for cocaine possession.

During closing argument, the State tried to cast doubt on Serena's claim that she did not know John had brought drugs into her apartment. It also tried to paint her as a co-conspirator in her brothers' drug-dealing, highlighting that (1) Serena knew that her brothers dealt drugs but refused to sever ties with them; (2) Serena's brothers had been arrested with drugs in her apartments at two different times; and (3) Serena had benefitted from her brothers' activities by obtaining a car and money from them.

The court gave the jury a charge that included an instruction on the law of parties. *See* Tex. Penal Code Ann. § 7.02(a) (West 2003). The jury found Serena guilty on all four counts. The court assessed punishment at ten years' community supervision on the possession count and two years' state-jail time on the child-endangerment counts. The court also assessed fines totaling $10,000. Serena appeals.

## STANDARD OF REVIEW

When an appellant challenges the legal sufficiency of the evidence supporting her conviction, we consider whether a rational trier of fact could have found that the evidence established the essential elements of the offense beyond a reasonable doubt. *Vodochodsky v. State*, 158 S.W.3d 502, 509 (Tex. Crim. App. 2005). We review all the evidence in the light most favorable to the verdict and assume that the trier of fact resolved conflicts in the testimony, weighed the evidence, and drew reasonable inferences in a manner that supports the verdict. *See Rollerson v. State*, 227 S.W.3d 718, 724 (Tex. Crim. App. 2007); *Shams v. State*, 195 S.W.3d 346,

347 (Tex. App.—Austin 2006, pet. ref'd) (citing *Griffin v. State*, 614 S.W.2d 155, 159 (Tex. Crim. App. 1981)).

When an appellant challenges the factual sufficiency of the evidence supporting her conviction, we review all of the evidence in a neutral light and ask whether a jury was rationally justified in finding guilt beyond a reasonable doubt. *See Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006). We then determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence. *Id*. at 415. We will not reverse a case on a factual sufficiency challenge unless we can say, with some objective basis in the record, that the great weight and preponderance of the evidence contradicts the jury's verdict. *Id*. at 417.

## DISCUSSION

Serena argues that the evidence introduced at trial was legally insufficient to sustain any of the charges against her and factually insufficient to sustain the possession charge. We will first address the legal sufficiency of the evidence supporting the possession charge because, for reasons explained below, our analysis of that issue dictates the outcome of this entire appeal.

### *Legal Sufficiency—Possession of a Controlled Substance*

A defendant is guilty of possessing a controlled substance if she "knowingly or intentionally" has "actual care, custody, control, or management" of it. Tex. Health & Safety Code Ann. §§ 481.002(38), .115(a) (West. Supp. 2009). When a defendant has exclusive possession of the place where a controlled substance is found—for example, if the substance is found on her person—her knowledge of and control over the substance may be inferred. *See Poindexter v. State*,

153 S.W.3d 402, 406 (Tex. Crim. App. 2005). When a defendant does not have exclusive possession of the place where the substance is found, however, her knowledge of and control over the substance cannot be inferred unless additional independent facts and circumstances link her to the controlled substance. *Id*. Whether the State's evidence linking a defendant to a controlled substance is direct or circumstantial, the evidence must establish, "to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Id*. at 405-06 (citing *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995)). "This rule simply [reflects] the common-sense notion that a person—such as a father, son, spouse, roommate, or friend—may jointly possess property like a house but not necessarily jointly possess the contraband found in that house." *Id*. at 406.

There are many factors that may sufficiently "link" a defendant to a controlled substance not in her exclusive possession, including: (1) the defendant's presence when a search is conducted; (2) whether the controlled substance was in plain view; (3) the defendant's proximity to and the accessibility of the controlled substance; (4) whether the defendant was under the influence of a controlled substance when arrested; (5) whether the defendant possessed other controlled substances or narcotics when arrested; (6) whether the defendant made incriminating statements when arrested; (7) whether the defendant attempted to flee; (8) whether the defendant made furtive gestures; (9) whether there was an odor of a controlled substance; (10) whether other controlled substances or drug paraphernalia were present; (11) whether the defendant owned or had the right to possess the place where the controlled substance was found; (12) whether the place where the controlled substance was found was enclosed; (13) whether the defendant was found with a large

7

amount of cash; and (14) whether the conduct of the defendant indicated a consciousness of guilt. *Evans v. State*, 202 S.W.3d 158, 162 n.12 (Tex. Crim. App. 2006). While these factors may "circumstantially establish the legal sufficiency of the evidence to prove a knowing 'possession,'" they "are not a litmus test." *Id*. Rather, they are simply a framework for applying the legal-sufficiency standard that governs all criminal cases. *See Allen v. State*, 249 S.W.3d 680, 693 n.13 (Tex. App.—Austin 2008, no pet.). Thus, what matters is not the sheer number of links, but rather the logical force of all the evidence, direct and circumstantial. *Poindexter*, 153 S.W.3d at 745.[10] The force of the links need not be such as to exclude every other alternative hypothesis except the defendant's guilt, *Brown*, 911 S.W.2d at 748, but it "must generate more than a strong suspicion or mere probability of guilt." *Allen*, 249 S.W.3d at 693 n.13 (citations omitted).

The State does not explicitly employ a factorial approach, but it argues that the following justify Serena's conviction:

- Serena lived in the apartment where the drugs were found and was the sole tenant listed on the apartment's lease;

- Serena refused to cooperate with police and resisted arrest, "while at the same time warning her brother and his girlfriend that officers were present at her home";

- Serena "had full knowledge of the fact that her brother, John Williams, was a drug dealer";

- Serena accepted money from John on more than one occasion even though she "was unable to tell the jury of any legitimate employment held by her brother";

---

[10] That said, "[s]eldom will any one factor have logical force sufficient to sustain a conviction based on constructive possession of contraband. An affirmative link customarily emerges from an orchestration of several of the listed factors and the logical force they have in combination." *Allen v. State*, 249 S.W.3d 680, 693 n.13 (Tex. App.—Austin 2008, no pet.) (citations omitted).

8

- Serena had also accepted money and a car from her brother George, a convicted drug-dealer;

- Serena's brother George had previously been arrested with drugs at Serena's old apartment; and

- "John Williams was so intoxicated on cocaine at the time of the offense that it took three peace officers and a taser to subdue him; clearly his own sister would recognize that Mr. Williams was intoxicated at such a high level of intoxication."

We hold that these facts are legally insufficient to establish beyond a reasonable doubt that Serena knowingly exercised control over the drugs in her closet.

As we recently noted, "custody and control of the residence where the contraband is found are not dispositive of knowledge of any narcotic located in the residence, nor is it synonymous with control of the contraband found therein." *Id*. at 690 (citiations omitted). Put another way, "[t]he fact that a defendant rented the premises upon which narcotics are found, if others also occupied the premises, is not usually sufficient in and of itself to justify a finding of joint possession." *Id*. at 698 n.17. Thus, the mere fact that Serena rented the apartment where the drugs were located does not suggest that she possessed the drugs in the closet; John and his girlfriend also occupied the apartment when the police arrived and had done so for several hours.

It is also significant that the drugs were not in plain view, but rather were stashed in a closed closet. "Where the contraband is secreted, courts require additional facts and circumstances to prove the knowledge element: consciousness of guilt, conflicting statements, or an implausible account of events." *Id*. at 694.[11] There is no evidence that Serena gave conflicting statements or an

---

[11] Contraband placed in a closed closet qualifies as "secreted." *See, e.g.*, *Moon v. State*, 331 S.W.2d 312, 312 (Tex. Crim. App. 1959); *United States v. Saucedo*, 226 F.3d 782, 785 (6th Cir. 2000).

implausible account. The State contends that Serena indicated her consciousness of guilt by resisting arrest and calling out to her brother while being handcuffed, but at the point she did those things, the officers had already told her that they were only at her apartment to arrest her on a child-custody-related charge. Moreover, at the point when Serena began resisting arrest and calling out to her brother, the officers had given her no indication that they even intended to enter her apartment; indeed, the officers pulled Serena into the hallway outside her apartment when she began refusing to cooperate. Under such circumstances, it is unreasonable to infer that Serena's actions indicate a consciousness of guilt vis-à-vis the drugs in the closet. *See id*. at 703 ("To be legitimate or permissible, an inference must be deduced as a logical consequence of the facts presented in evidence, and must be a logical and rational connection between the facts in evidence and the fact to be inferred.").

The State's contention that Serena knew John was a drug-dealer is equally unavailing.[12] Even if Serena knew John was a drug-dealer, it does not follow that Serena knew John had drugs in her apartment on the date in question. "[I]t must be remembered that one is not a party to joint possession [just because] she was present and had knowledge of an offense by another. A defendant's knowledge of the presence of the contraband is insufficient to establish the requisite mental state knowledge of his or her possession of the drugs." *Id*. at 698 (citing *Oaks v. State*, 642 S.W.2d 174, 177-78 (Tex. Crim. App. 1982)).

The same analysis applies to the fact that Serena had accepted money and a car from her brothers. Her acceptance of these items does not suggest that Serena knew the items were the

---

[12] This contention comes dangerously close to advocating guilt by association. *See Allen*, 249 S.W.3d at 702 (State's suggestion that association with known drug dealer "leads directly to an inference of guilt" is "contrary to our system of justice").

fruits of drug-dealing. Her acceptance of money might be more incriminating if Serena had accepted large amounts of it, but the uncontested evidence at trial showed that she only occasionally accepted money to help pay her bills. Such financial assistance between family members does not suggest criminal collusion. More importantly, even if Serena had accepted large amounts of money from her brothers, and even if she knew that the money came from drug-dealing, that would in no way bear on whether Serena knew about the drugs found in her closet on October 14, 2007. Serena was charged only with possessing those drugs, not with colluding in an ongoing drug-dealing operation.

Similarly, the charges against Serena are not supported by the fact that George was arrested with cocaine in Serena's previous apartment in March 2007. Uncontested evidence showed that Serena was not in that apartment at the time and was not charged with anything as a result of that incident. Again, the facts of George's arrest might be relevant if Serena were charged with collusion in an ongoing drug-dealing operation, but she was charged only with possessing the drugs found in her closet on October 14, 2007.

Finally, there was simply no evidence that Serena "must have" known John was high on the date in question given how vehemently he resisted arrest. First, there was no evidence that Serena interacted with John between the time he ingested cocaine and the time he resisted arrest, let alone evidence that Serena saw John engage in behavior during that time that "must have" suggested he was intoxicated. Second, even if Serena had interacted with John between the time he ingested cocaine and the time he resisted arrest, there was no evidence that John's intoxication would necessarily have caused him to behave incriminatingly. The State questioned Serena about her knowledge of drug-induced behavior, and she testified that she did not know what such behavior looked like. Finally, and most importantly, even if Serena did know that John was high on the date

11

in question, that has no bearing on whether she knew about the drugs in her closet. "[I]t must be remembered that one is not a party to joint possession [just because] she was present and had knowledge of an offense by another." *Id.* at 698.

In addition to the above, we note that the majority of the factors used in the affirmative-link analysis weigh against a finding of guilt: Serena was not present when her apartment was searched (factor 1); the drugs were not in plain view (factor 2); Serena was not under the influence of a controlled substance when arrested (factor 4); Serena did not possess other controlled substances or narcotics when arrested (factor 5); Serena did not make incriminating statements when arrested (factor 6); Serena did not make furtive gestures (factor 8); there was no odor of the controlled substance (factor 9); no other controlled substances or drug paraphernalia were present (factor 10); and Serena was not found with a large amount of cash (factor 13). *See Poindexter*, 153 S.W.3d at 745. On the other hand, significant evidence linked John to the drugs in the closet:

- John was high on cocaine at the time of his arrest (factor 4);

- John dropped a baggie of cocaine on the ground during his struggle with police (factor 5);

- John vigorously resisted arrest (factor 7);

- The baggies in the closet contained cocaine, the same controlled substance that John dropped on the ground and had in his system;

- The baggie John dropped had the same distinctive marking (a Batman-logo sticker) as the baggies in the closet;

- John's wallet was found with a large amount of cash in it (factor 13); and

- Serena testified—and she was neither impeached nor contradicted—that John and his girlfriend exclusively occupied the living room (and therefore had exclusive access

12

to the living-room closet) for several hours shortly before the police arrived at Serena's apartment.[13]

In light of all of the above, we conclude that a rational trier of fact could not have found that the knowledge and control elements of Serena's possession charge were established beyond a reasonable doubt. *See Vodochodsky*, 158 S.W.3d at 509. We reach this conclusion while being careful to review the evidence in the light most favorable to the verdict. *See Rollerson*, 227 S.W.3d at 724. As a result, we hold that the evidence was legally insufficient to support Serena's conviction for possession of a controlled substance. This conclusion obviates the need to consider whether the evidence was factually sufficient to support Serena's conviction for possession of a controlled substance. *See Cantrell v. State*, 280 S.W.3d 408, 414 (Tex. App.—Amarillo 2008, pet. ref'd).

### *Legal Sufficiency—Child Endangerment*

A defendant commits the offense of child endangerment if she "intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that places a child younger than 15 years in imminent danger of death, bodily injury, or physical or mental impairment." Tex. Penal Code § 22.041(c). Because we have already held that the evidence was legally insufficient to establish that Serena knew about the drugs in her closet, it necessarily follows that Serena cannot be criminally culpable for endangering her children; criminal culpability requires a voluntary act. *See id*. § 6.01(a) ("A person commits an offense only if he *voluntarily*

---

[13] Relatedly, there was no evidence that Serena had any reason to open (or in fact opened) the living room closet between the time John arrived and the time the officers arrived. Indeed, she testified at trial that she did not even know what was normally stored in the closet.

13

engages in conduct, including an act, an omission, or possession.") (emphasis added), (b) ("Possession is a voluntary act if the possessor *knowingly* obtains or receives the thing possessed or *is aware of* his control of the thing for a sufficient time to permit him to terminate his control.") (emphases added) (West 2003).

Nevertheless, we note a second, independent reason why Serena cannot be criminally culpable for endangering her children: the harm to her children was not imminent. *See* Tex. Penal Code § 22.041(c) (child endangerment requires that danger is imminent). We have defined "imminent" in this context to mean "ready to take place, near at hand, impending, hanging threateningly over one's head, menacingly near." *Millslagle v. State*, 81 S.W.3d 895, 898 (Tex. App.—Austin 2002, pet. ref'd) (citation and punctuation omitted). "It is not sufficient that the accused placed the child in a situation that is potentially dangerous. The accused's conduct must threaten the child with immediate, impending death, bodily injury, or impairment." *Id*.; *see also Newsom v. B.B.*, 306 S.W.3d 910, 918 (Tex. App.—Beaumont 2010, pet. filed) ("[T]o be 'imminent' for purposes of imposing responsibility pursuant to Penal Code § 22.041(c), the situation must be immediate and actual, not potential or future, at the moment of the act or omission by the defendant.").

Here, several discrete events needed to occur before Serena's children could be harmed: the children needed to be in the living room; they needed to open the closet; they needed to see the drugs; they needed to retrieve the drugs; and they needed to ingest the drugs.[14] *Cf. Butler v. State*, No. 14-09-00067-CR, 2010 Tex. App. LEXIS 1159, at *11-12 (Tex. App.—Houston [14th

---

[14] We assume that ingesting the drugs would have harmed the children to the degree required by the child-endangerment statute. We note, however, that the State did not present evidence on the matter.

Dist.] Feb. 18, 2010, no pet.) (mem. op., not designated for publication) (danger was imminent where narcotics were left on passenger seat of car and child was left unrestrained in back seat); *Anguiano v. State*, No. 08-02-00443-CR, 2004 Tex. App. LEXIS 932, at *4 (Tex. App.—El Paso Jan. 29, 2004, pet. ref'd) (mem. op., not designated for publication) (danger was imminent where child reached for exposed drug syringe that was eight to ten inches away from him). There was no evidence that any of these events occurred; indeed, it is not certain that Serena's children were even physically capable of seeing and retrieving the drugs (which, again, were on a shelf towards the top of the closet).[15] Thus, the "evidence, although more than sufficient to show a potentially dangerous situation, does not rationally support a finding beyond a reasonable doubt that the child[ren] w[ere] in imminent danger of death, bodily injury, or physical or mental impairment." *Id*.

For these reasons, we hold that the evidence was legally insufficient to convict Serena of child endangerment.

## CONCLUSION

For the reasons stated above, we reverse the judgment of the trial court and order an acquittal on all counts.

---

[15] Viewing the evidence in the light most favorable to the verdict, we must assume that Serena's two oldest children were physically capable of seeing and retrieving the drugs. As the State conceded, however, there was no way that Serena's nine-month-old child was physically capable of retrieving the drugs himself. Thus, there was an additional event that had to occur before he could be harmed: the older children had to give him the drugs after retrieving them. The State acknowledged as much in its closing argument: "What if one of the older children got that substance and said, well, let's see if the baby likes it? Are you willing to take that risk?"

15

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Henson

Reversed and Acquittal Rendered

Filed:   July 14, 2010

Do Not Publish