

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

Nos.  07-14-00278-CR
      07-14-00279-CR

TEDDIE DAVENPORT, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 77th District Court
Limestone County, Texas
Trial Court Nos. 13,184-A, 13,185-A; Honorable Patrick H. Simmons, Presiding

April 27, 2015

## OPINION[1]

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

In a consolidated trial,[2] appellant, Teddie Davenport, was convicted, pursuant to two indictments, of two separate incidents of aggravated assault on a public servant.[3]  A

---

[1] Pursuant to the Texas Supreme Court's docket equalization efforts, this case was transferred to this Court from the Tenth Court of Appeals.  See TEX. GOV'T CODE ANN. § 73.001 (West 2013).  That being so, we must decide this case "in accordance with the precedent of the transferor court under the principles of *stare decisis*" if our decision otherwise would have been inconsistent with the precedent of the transferor court.  TEX. R. APP. P. 41.3; *Phillips v. Phillips*, 296 S.W.3d 656, 672 (Tex. App.—El Paso 2009, pet. denied).

[2] Appellant was convicted in No. 13,184-A, which corresponds to our No. 07-14-00278-CR and No. 13,185-A, which corresponds to our No. 07-14-00279-CR.

jury assessed appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice (ID-TDCJ) for 50 years. Appellant appeals through two issues, wherein he contends (1) that the State's allegation that an intense light was a deadly weapon does not meet the definition of a deadly weapon in the Texas Penal Code,[4] and (2) that the trial court erred in submitting the deadly weapon allegation by the State in separate "counts" as separate verdict forms. Disagreeing with appellant, we will affirm.

## Factual and Procedural Background

On October 5, 2013, appellant and his confederate, Richard Fraser, set out to steal a welding machine and other items from a country weekend home owned by Donald Jones. Unknown to appellant and his cohort was the fact that two Texas Department of Parks and Wildlife Game Wardens, Trent Marker and Michael Serbanic, were in that part of Limestone County looking for a poacher who was suspected of hunting from the roadway out of season. The Game Wardens set up surveillance at a rural location in Limestone County. During this surveillance, they noticed a vehicle driving very slowly toward them with the lights off. After repositioning their vehicle, they watched as the vehicle went toward Jones's home. Initially, the Game Wardens did not know who owned the home and, indeed, speculated that it might be the home of appellant's father. However, while observing appellant and his associate, the Game Wardens heard glass break and surmised they were witnessing a burglary in progress.

_____

[3] *See* TEX. PENAL CODE ANN. § 22.02(a)(2), (b)(2)(B) (West 2011).

[4] Further reference to the Texas Penal Code will be by reference to "section ____" or "§ ____."

As appellant began leaving the scene of the burglary, Warden Serbanic activated the emergency lights and siren on the Department of Parks and Wildlife pickup truck he was driving and attempted to block appellant's path away from the burglary site. It was at this time that appellant's truck and trailer collided with the vehicle containing the Game Wardens.[5] Appellant maneuvered his vehicle away from the Game Wardens' pickup and there began a chase across rural parts of Limestone County.

The pursuit by the Game Wardens of appellant's vehicle reached speeds of 80 m.p.h. After an extended pursuit, there suddenly appeared an intense beam of light emanating from appellant's vehicle that was directed into the cab of the pursuing Game Wardens' vehicle. Warden Serbanic, who was driving the Parks and Wildlife pickup, was temporarily blinded by the beam of light. Serbanic then lost control of his vehicle, went off the road, and crashed into a tree. As a result of colliding with the tree, Warden Marker was seriously injured and Warden Serbanic suffered less serious injuries.

Appellant escaped the scene of the wreck and was hidden by friends. However, the next day, he was captured and subsequently indicted for a number of offenses. At the trial, appellant was convicted of two aggravated assaults on peace officers arising out of the beam of light causing Warden Serbanic to lose control of his vehicle and crash into the tree, one conviction for the injuries suffered by Warden Marker, and another for the injuries suffered by Warden Serbanic. Appellant was also convicted of burglary of a building and evading arrest or detention by motor vehicle. Appellant's

---

[5] This collision was the basis of two additional charges of aggravated assault on a peace officer. Appellant was acquitted of those charges during the consolidated trial.

counsel on appeal filed an *Anders*[6] brief regarding the burglary and evading convictions, and those cases were disposed of by the Court in a separate opinion.[7] Appellant, as noted above, was acquitted on the other two charges of aggravated assault on a peace officer arising out of the initial collision.

The jury assessed appellant's sentence at confinement in the ID-TDCJ for 50 years on each of the aggravated assault on a peace officer convictions. Appellant now appeals contending that (1) the State's allegation that an intense light was a deadly weapon does not meet the definition of a deadly weapon in the Texas Penal Code, and (2) the trial court erred in submitting the deadly weapon allegation by the State in separate "counts" as separate verdict forms. We will affirm.

Deadly Weapon

Appellant's first issue contends that the deadly weapon finding by the jury is erroneous because "intense light" does not qualify as a deadly weapon under Texas law, as it is not an "object." As written, appellant's issue seems to complain that the indictment does not allege a violation of the deadly weapon statute for purposes of punishment and sentence. At this stage of the proceedings, the problem with such an allegation is that appellant filed no motion to quash the indictment or motion for directed verdict under this theory, and did not object to the court's charge. From our perspective it seems that appellant has failed to preserve this point for appeal. *See* TEX. R. APP. P. 33.1(a)(1). That being said, we will address the contention.

---

[6] *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 498 (1967).

[7] *Davenport v. State*, Nos. 07-14-00280-CR, 07-14-00281-CR, 2015 Tex. App. LEXIS 3605 (Tex. App.—Amarillo Apr. 13, 2015, no pet. h.) (mem. op., not designated for publication).

Appellant seems to base his argument on the theory that anything alleged as a deadly weapon must be an object. He says as much in the opening portion of his brief when he quotes this Court in *Cantrell v. State*, as saying, "[t]o sustain a deadly weapon finding, the evidence must show that the object in question meets the requirement of a deadly weapon." 280 S.W.3d 408, 413 (Tex. App.—Amarillo 2008, pet. ref'd). While appellant quotes *Cantrell* accurately, his analysis and the application of the word choice is erroneous. The word "object" as used in *Cantrell* was used as a descriptive identifying word and not as a limiting word. Any number of words could have been used to attempt to designate the deadly weapon allegation, such as "item" or "thing."

The position taken by appellant is reminiscent of the argument made in *Stanul v. State,* 870 S.W.2d 329, 332–33 (Tex. App.—Austin 1994, pet. ref'd) (per curiam). There, the appellant argued that a floor could not be a deadly weapon because it was not an instrument. *Id.* at 333. The *Stanul* court went to great pains to point out that the applicable portion of section 1.07(a)(17) did not require a deadly weapon to be an instrument or a weapon. *See id.* Specifically, the Texas Penal Code defines "deadly weapon" as "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." § 1.07(a)(17)(B). The *Stanul* court pointed out that the Legislature defined deadly weapon the way it did and that the definition was clear and unambiguous; therefore, the Legislature must be understood to mean what it has expressed, and it is not for the courts to add or subtract from the statute. *See Stanul*, 870 S.W.2d at 334 (citing *Boykin v. State*, 818 S.W.2d 782, 785 (Tex. Crim. App. 1991) (en banc)).

Appellant's argument simply substitutes the word "object" for the word "instrument" as used in *Stanul*. Like the *Stanul* court, we conclude that the definition contained in the Texas Penal Code means exactly what it says. Also agreeing with this position is the Waco Court in *Mills v. State*, where the Court was addressing an allegation that the evidence was insufficient because the appellant did not actually push the victim into the intersection with his pickup and his pickup was not capable of causing death or serious bodily injury. 440 S.W.3d 69, 72 (Tex. App.—Waco 2012, pet. ref'd). The *Mills* court was very direct when it answered appellant's argument that "[c]ase law has made it clear that the word 'anything' in the definition of a deadly weapon means just that: anything." *Id.* at 72–73. (citing *Guzman v. State,* 188 S.W.3d 185, 198 (Tex. Crim. App. 2006) (Keller, P.J., concurring)).

Like the *Stanul* and *Mills* courts, we believe that the definition of a deadly weapon, as contained in section 1.07(a)(17)(B), means exactly what it says, that *anything* in the manner of its use or intended use that is capable of causing serious bodily injury or death is a deadly weapon. Thus, we overrule appellant's first issue.

## Jury Charge

Appellant's second issue contends that the trial court erred when it submitted the deadly weapon allegation in each of the separate counts' verdict forms. As constructed, appellant alleges a jury charge error occasioned by the manner in which the trial court charged the jury on the question of the use of a deadly weapon. The record is clear that there was no objection to the court's charge prior to the case being submitted to the jury. Accordingly, we will apply the precepts of *Almanza v. State* to our fact pattern.

6

*See* 686 S.W.2d 157, 171 (Tex. Crim. App. 1984) (en banc) (op. on reh'g). If the charge contains error, we will reverse only if that error caused appellant to suffer egregious harm. *See id.* However, before we get to any question of harm, we must determine if the charge given by the trial court was in error. *See id.* at 174.

In order to ascertain whether the court's charge contained error, we must review the record. The record, as applicable to the appeal before the Court, reflects that appellant went to trial on two superseding indictments. Each indictment contained two counts of aggravated assault on a peace officer. One indictment, in No. 07-14-00278-CR, alleged that Trent Marker was the peace officer assaulted in both counts. The other indictment, in No. 07-14-00279-CR, alleges that Michael Serbanic was the peace officer assaulted in both counts. Count one of each indictment alleges that the assault was conducted by striking the vehicle the Game Wardens were either driving or riding in with the vehicle driven by appellant. Count two of each indictment alleges that the assault was conducted by illuminating the motor vehicle driven by Michael Serbanic with an intense beam of light and thereby impeding Serbanic's vision resulting in a crash that injured Marker (No. 07-14-00278-CR) and Serbanic (No. 07-14-00279-CR).

In addition to those procedural aspects of the record discussed above, the evidence at trial reveals that the initial incident of aggravated assault—that is, the vehicle collision referred to in count one of each indictment—occurred at approximately 5:06 A.M. on October 5, 2013. We can ascertain this time because this is when Marker first made radio contact with the Limestone County dispatch. As to the events transpiring at that time, we have the testimony of both Marker and Serbanic regarding the collision as appellant was attempting to flee from the site of the burglary. After the

7

expiration of one minute and fifty-two seconds, the first use of the intense beam of light is reported. Further, during the testimony of both Game Wardens, Exhibit 20-B was utilized to plot the path of the chase and to show the distance covered during the chase. The testimony revealed that the chase lasted for over five miles before Serbanic lost control of the vehicle, due to the intense beam of light being shined into the passenger cab of the pickup truck, and hit the tree.

Appellant's contention is grounded on the proposition that the two separate counts are simply different manners and means of committing one aggravated assault on a peace officer. However, as demonstrated above, the record belies that proposition. From this record, it is clear that two separate and distinct offenses of aggravated assault on a peace officer occurred. Further, the record reflects that the jury found appellant "not guilty" of the first count, aggravated assault by motor vehicle, and "guilty" of the second count, aggravated assault by use of the intense light.

Appellant asserts that the jury charge at issue violated appellant's right to a general verdict. How, other than appellant's mistaken belief that the counts that were submitted to the jury were in fact paragraphs describing the manner and means of committing the offense of aggravated assault on a peace officer, appellant was denied a general verdict goes, otherwise, unsaid. Appellant cites this Court to *Renfro v. State* for the proposition that counts refer to the allegations used to charge the offense itself. *See* 827 S.W.2d 532, 535 (Tex. App.—Houston [14th Dist.] 1992, pet. ref'd). *Renfro* goes on to explain that, "[t]hus, the term 'count' is used to charge the offense itself, and a 'paragraph' is a portion of a count, which charges a *method of committing the offense.*" *See id.*

As far as appellant's analysis goes, it is correct. However, the analysis used by appellant ignores certain statutes that must be considered. First, the Texas Code of Criminal Procedure provides that "[t]wo or more offenses may be joined in a single indictment, information, or complaint, with each offense stated in a separate count, if the offenses arise out of the same criminal episode, as defined in Chapter 3 of the Penal Code." TEX. CODE CRIM. PROC. ANN. art. 21.24(a) (West 2009).[8] Chapter 3 of the Penal Code provides the following definition of "criminal episode":

> In this chapter, "criminal episode" means the commission of two or more offenses, regardless of whether the harm is directed toward or inflicted upon more than one person or item of property, under the following circumstances:
>
> (1) the offenses are committed pursuant to the same transaction or pursuant to two or more transactions that are connected or constitute a common scheme or plan; or
>
> (2) the offenses are the repeated commission of the same or similar offenses.

§ 3.01 (West 2011). Next, we find that an appellant may be prosecuted in a single trial for all offenses arising out of the same criminal episode. § 3.02(a) (West 2011) (stating "a defendant may be prosecuted in a single criminal action for all offenses arising out of the same criminal episode.").

Finally, we review article 37.07, § 1(c), which provides as follows:

> If the charging instrument contains more than one count or if two or more offenses are consolidated for trial pursuant to Chapter 3 of the Penal Code, the jury shall be instructed to return a finding of guilty or not guilty in a separate verdict as to each count and offense submitted to them.

art. 37.07, § 1(c).

---

[8] Further reference to the Texas Code of Criminal Procedure will be by reference to "article ___" or "art. ___."

9

When the factual and procedural background of the case is placed in the proper statutory perspective, the following becomes clear. Appellant and his cohort were involved in one criminal episode on the morning in question. *See* § 3.01; *Phea v. State*, 190 S.W.3d 232, 236 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd).

The time and distance differential between the allegations of the first count and those of the second count and the definition of "criminal episode," as discussed above, lead to a conclusion that the indictment was properly organized under counts. *See* art. 21.24(a); *Renfro* 827 S.W.2d at 535–36. The facts do not support any conclusion that the second incident, in which an intense beam of light was alleged as the deadly weapon, was simply a continuation of the aggravated assault, in which the motor vehicle was alleged as the deadly weapon. Because we find the indictment was properly set forth in counts, there is no error in the court's charge. *See Almanza,* 686 S.W.2d at 174. Appellant's second issue is overruled.

Conclusion

Having overruled appellant's two issues, we affirm the trial court's judgments of conviction.

Mackey K. Hancock
Justice

Publish.